IN THE MATTER OF: MICHAEL CHARLES HAYES

No. 9210SC792

(Filed 3 August 1993)

1. **Appeal and Error § 168 (NCI4th)— insanity acquittee—changed rules for recommitment hearing—statute subsequently changed—new hearing—due process and equal protection issues from first hearing moot**

   Defendant's contention that the 1991 amendment to N.C.G.S. §§ 122C-268.1(i) and 122C-276.1(c), which required an insanity acquittee to prove that he was no longer dangerous and mentally ill, violated due process and equal protection is moot, since North Carolina amended the provision in question in response to the U. S. Supreme Court decision of *Foucha v. Louisiana*, 504 U.S. ---, to require an insanity acquittee to prove that he is no longer mentally ill or is no longer dangerous to others, and defendant has since had an opportunity to be heard under the amended statute.

   **Am Jur 2d, Appeal and Error §§ 760 et seq.**

2. **Hospitals and Medical Facilities or Institutions § 60 (NCI4th)— insanity acquittee—commitment rehearing—trial court division and open hearings—equal protection**

   An insanity acquittee's equal protection rights are not violated because commitment rehearings take place in the trial division in which the criminal trial was held and the rehearings are open to the public while hearings involving other involuntarily committed persons are closed and confidential, since the insanity acquittee is entitled to fewer constitutional protections than one who is civilly committed and surviving families, victims and the public have a right to know if and when an insanity acquittee will be released back into the public.

   **Am Jur 2d, Incompetent Persons §§ 39-43.**

3. **Constitutional Law § 165 (NCI4th); Hospitals and Medical Facilities or Institutions § 60 (NCI4th)— insanity acquittee— recommitment hearing—shift of burden of proof—open hearing—no ex post facto violation**

   Application of the statutory amendments shifting the burden of proof in a recommitment hearing for an insanity

**IN RE HAYES**

[111 N.C. App. 384 (1993)]

acquittee and opening the hearing to the public after respondent was acquitted by reason of insanity and was involuntarily committed did not violate the Ex Post Facto Clause since the amendments did not make an innocent act criminal, alter the nature of the offense, or increase the punishment for a criminal act, and they are procedural changes that do not violate substantive rights or protections, though they may disadvantage the respondent.

**Am Jur 2d, Constitutional Law §§ 634 et seq.**

Appeal by respondent from order entered 21 February 1992 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 7 June 1993.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Valerie B. Spalding, for the State-appellee.*

*Karl E. Knudsen for respondent-appellant.*

ARNOLD, Chief Judge.

On 5 December 1988, respondent, Michael Charles Hayes, was indicted on four counts of first degree murder, five counts of assault with a deadly weapon with intent to kill inflicting serious injury, two counts of assault with a deadly weapon on a law enforcement officer, and one count of assault with a deadly weapon on medical personnel. These widely-publicized crimes all occurred on 17 July 1988 in Forsyth County. On 14 April 1989, a Forsyth County jury tried respondent on all charges and found respondent not guilty by reason of insanity. The superior court thereafter had respondent involuntarily committed to the John Umstead State Mental Health Facility in Butner for temporary custody, examination and treatment pending a district court hearing. On 20 April 1989, the district court held an involuntary commitment proceeding pursuant to N.C. Gen. Stat. § 122C (1989) and committed respondent on the bases that respondent was mentally ill and dangerous to himself and others.

After his initial commitment, respondent was moved to Dorothea Dix Hospital. Thereafter, prior to 1991, respondent had several rehearings regarding his involuntary commitment under former G.S. § 122C. Under the former procedure, recommitment of an involuntary acquittee was based upon the State's proof of continu-

ing mental illness and dangerousness of the acquittee. The district court, at each rehearing under former G.S. § 122C, found by clear, cogent, and convincing evidence that respondent was mentally ill and dangerous to others and ordered his continued hospitalization.

In April 1991, however, the North Carolina legislature amended the General Statutes relating to the involuntary commitment of persons who had been found not guilty by reason of insanity, which amendments took immediate effect. Senate Bill 43 enacted as Chapter 37 of the 1991 Session Laws was codified as N.C. Gen. Stat. § 122C-276.1, which provided the following:

> The respondent shall bear the burden to prove by a preponderance of the evidence that he is no longer dangerous to others. If the court is so satisfied, then the respondent shall bear the burden to prove by a preponderance of the evidence (i) that he does not have a mental illness, or (ii) that confinement is not necessary to ensure his own survival or safety and that confinement is not necessary to alleviate or cure his illness. If the court is so satisfied, then the court shall order the respondent discharged and released. If the court finds that the respondent has not met his burden of proof, then the court shall order inpatient commitment be continued . . . .

N.C. Gen. Stat. §§ 122C-268.1(i) and -276.1(c) (Cum. Supp. 1991). Whereas prior to the 1991 amendment respondent was entitled to release when no longer dangerous *or* mentally ill, the effect of the revised statutory provision relating to the standards for recommitment hearings was to shift the burden of proof from the State to the respondent and require the respondent to show both lack of dangerousness and lack of mental illness requiring confinement.

On 21 February 1992, respondent was subject to a rehearing under the amended provision of G.S. § 122C. After respondent and the State presented evidence on the issues of respondent's dangerousness and mental illness, the superior court made findings of fact and concluded that respondent failed to meet his burden of proof that he meets the criteria for release under G.S. § 122C-276.1. The court further concluded that the evidence showed that respondent was at the time presently dangerous to others and that he suffered from multiple mental illnesses which required his continued confinement. The court ordered, therefore, continued com-

IN RE HAYES

[111 N.C. App. 384 (1993)]

mitment of respondent for a period of one year. Respondent appealed the court's order.

The basis of the appeal before this Court concerns the constitutionality of the 1991 amendment to G.S. § 122C, Senate Bill 43. Respondent contends that by requiring an insanity acquittee to prove that he is no longer dangerous and that he is no longer mentally ill, Senate Bill 43 violates the Due Process and/or Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution, as well as Article I, Section 19 of the North Carolina Constitution. Respondent also asserts that Senate Bill 43 violates the *ex post facto* clauses of the Federal Constitution and North Carolina Constitution. We disagree with both assignments of error.

DUE PROCESS

[1] Respondent contends that G.S. §§ 122C-268.1(i) and -276.1(c) (Supp. 1991) violate the due process clauses of our state and federal constitutions. Respondent relies on the United States Supreme Court's recent decision in *Foucha v. Louisiana*, 504 U.S. ---, 118 L.Ed.2d 437 (1992). In *Foucha*, the Court held that a Louisiana statute violated the Due Process Clause of the Fourteenth Amendment because it allowed an insanity acquittee to be committed to a mental institution until he is able to prove that he is not dangerous to himself and others, regardless of whether he suffers from any mental illness. *Id.* at ---, 118 L.Ed.2d at 447. "[T]he acquittee may be held as long as he is both mentally ill and dangerous, but no longer." *Id.* at ---, 118 L.Ed.2d at 446. In light of *Foucha*, respondent likens the statutory scheme in North Carolina to that of Louisiana by requiring the insanity acquittee to prove that he is not dangerous. Only if he satisfies the court as to his lack of dangerousness will the issue of mental illness arise. Failure to prove lack of dangerousness will result in continued confinement. Thus, like the Louisiana statute, the statute at issue disregards the issue of mental illness unless the acquittee first proves he is not dangerous.

We agree with respondent that under *Foucha* the scheme under which the February 1992 rehearing took place was unconstitutional. However, since *Foucha*, the North Carolina General Assembly has amended the provision at issue and respondent has had an opportunity to be heard under the amended statute. Therefore, respondent's assignment of error regarding this issue is moot.

In response to the Supreme Court's decision in *Foucha*, the legislature enacted Session Laws c. 1034, House Bill 379 effective 24 July 1992 which provides:

> The respondent shall bear the burden to prove by a preponderance of the evidence that he (i) no longer has a mental illness as defined in G.S. 122C-3(21), *or* (ii) is no longer dangerous to others as defined in G.S. 122C-3(11)b.

N.C. Gen. Stat. §§ 122C-268.1(i) and -276.1(c) (Cum. Supp. 1992) (emphasis added). Although respondent questions the rehearing in February 1992 where he was recommitted for an additional year, he has since had the opportunity to be heard under the amended statute. Pursuant to G.S. § 122C-276.1(d), fifteen days before the end of any commitment period, an automatic rehearing is calendared and the parties are notified. In February 1993, fifteen days before the end of his commitment period, a rehearing was calendared and notice was given to respondent. At this time the amended statute was in effect thereby affording respondent the constitutional rights which he now complains he was deprived of in February 1992. Therefore this assignment of error, as respondent's counsel has conceded in oral argument, is moot.

## EQUAL PROTECTION

Respondent also contends that G.S. §§ 122C-268.1(i) and -276.1(c) violate the equal protection clauses of the federal and state constitutions because (1) the burden of proof is now on the respondent to show by a preponderance of the evidence that he is no longer dangerous or mentally ill, (2) the commitment rehearings take place in the trial division where respondent's criminal trial was held, and (3) the rehearings are open to the public. Respondent argues that he should be afforded the same benefits as a civil committee who is attempting to gain release from the hospital. We disagree.

First we note that respondent's first contention regarding his burden of proving lack of dangerousness and mental illness is moot since respondent has had the opportunity for a rehearing under the newly amended statute in response to *Foucha*. Moreover, respondent's complaint that he should not bear the burden of proof because he is no different from a civil committee ignores his special status as an insanity acquittee. The Supreme Court has recognized crucial differences between civil committees and insanity acquittees that justify different standards of proof. *Jones v. United States,*

463 U.S. 354, 77 L.Ed.2d 694 (1983). Indeed, numerous decisions exist supporting the shift in burden of proof to respondent at a release hearing due to his distinct status. *See, e.g., United States v. Wallace,* 845 F.2d 1471 (8th Cir.), *cert. denied,* 488 U.S. 845, 102 L.Ed.2d 94 (1988); *Benham v. Ledbetter,* 785 F.2d 1480 (11th Cir. 1986); *Dorsey v. Solomon,* 604 F.2d 271 (4th Cir. 1979).

[2] Respondent's second and third contentions under the equal protection argument are also without merit, especially in light of respondent's special status. N.C. Gen. Stat. § 122C-268.1(g) provides that an insanity acquittee's hearing shall take place in the trial division in which the original trial was held and that it shall be open to the public. In contrast, hearings involving other involuntarily committed persons are closed and confidential. N.C. Gen. Stat. § 122C-52 (1989). As we have stated above, the insanity acquittee is entitled to fewer constitutional protections than an individual who is civilly committed. The acquittee makes the tactical decision to rely on the insanity defense, therefore, the public has a right to know when and if such an individual is discharged into the community. Particularly in a case such as the one at bar, we believe that the surviving families and victims have a right to know if and when respondent will be released back into the community.

## Ex Post Facto

[3] Respondent's second assignment of error is that application of Senate Bill 43 to respondent's recommitment hearing when the amendment was enacted after respondent committed the acts charged, after respondent was acquitted by reason of insanity, and after respondent was involuntarily committed, violates the *ex post facto* provisions of the United States Constitution and the North Carolina Constitution. We disagree.

Both our state and federal constitutions contain provisions which may prohibit retrospective application of newly enacted laws. U.S. Const. art. I, § 10; N.C. Const. art. I, § 16. An *ex post facto* law has been defined by the United States Supreme Court as one which

punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed.

*Beazell v. Ohio,* 269 U.S. 167, 169-170, 70 L.Ed.2d 216, 217 (1925). Two critical elements must be present for a law to be considered *ex post facto*: it must apply to events occurring before its enactment and it must disadvantage the offender affected by it. *Weaver v. Graham,* 450 U.S. 24, 67 L.Ed.2d 17 (1981).

Respondent contends that he has been disadvantaged by retroactive application of Senate Bill 43 because he now has the burden of proof to show that he is no longer dangerous or mentally ill and because his hearing is open to the public. Respondent argues that the changes found in G.S. §§ 122C-268.1 and -276.1 are "fundamental, substantial, and their effects on respondent are profoundly to his detriment." A similar contention was made by the respondent in *Collins v. Youngblood,* 497 U.S. 37, 111 L.Ed.2d 30 (1990). In *Youngblood,* the respondent contested the retroactive application of a Texas statute allowing the reformation of an improper jury verdict in respondent's case. While conceding that the statute does not fall within the *Beazell* definition of *ex post facto* law, respondent maintained that even a *procedural* change which deprived a defendant of "substantial protections" may constitute an *ex post facto* violation. *Id.* at 45, 111 L.Ed.2d at 40. Retroactive procedural changes of law in criminal cases generally have not been recognized as violations of the Ex Post Facto Clause. *Id.; see, Dobbert v. Florida,* 432 U.S. 282, 53 L.Ed.2d 344 (1977); *In re Kivett,* 309 N.C. 635, 309 S.E.2d 442 (1983). The respondent in *Youngblood* correctly noted, however, as does the respondent in this case, that a procedural change may constitute an *ex post facto* violation if it deprives defendant of or infringes upon defendant's "substantial personal rights." *Beazell,* 269 U.S. at 171, 70 L.Ed.2d at 218; *Malloy v. South Carolina,* 247 U.S. 180, 183, 59 L.Ed.2d 905, 906 (1915). Although the *Youngblood* Court noted that a law labeled as procedural will not necessarily immunize it from *ex post facto* scrutiny, the Court held that for purposes of the Ex Post Facto Clause, it is logical to presume that a change in procedure by which a criminal case is adjudicated, as opposed to substantive changes in the law, will not violate the Clause even though the change may work to the accused's disadvantage. *Youngblood,* 497 U.S. at 49-50, 111 L.Ed.2d at 43-44. In other words, only a procedural change that alters the definition of an offense or increases the punishment, thereby expanding the scope of a criminal prohibition after the act is done, violates the Ex Post Facto Clause. *Id.*

**UNCC PROPERTIES, INC. v. GREEN**

[111 N.C. App. 391 (1993)]

In the instant case, neither of the statutory amendments makes an innocent act criminal, alters the nature of the offense, or increases the punishment for a criminal act. Shifting the burden of proof to respondent and opening the hearing to the public are procedural changes that do not violate substantive rights or protections, though they may disadvantage respondent. *See In the Matter of Rogers*, 63 N.C. App. 705, 306 S.E.2d 510, *disc. rev. denied, appeal dismissed*, 309 N.C. 633, 308 S.E.2d 716 (1983), *appeal dismissed*, 465 U.S. 1095, 80 L.Ed.2d 117 (1984) (statute requiring hearing for insanity acquittees before release from mental institution not *ex post facto* law under federal or state constitutions because procedures do not compromise punishment for crime); *United States v. Mest*, 789 F.2d 1069 (4th Cir.), *cert. denied*, 479 U.S. 846, 93 L.Ed.2d 102 (1986) (procedural change, although retroactive in application, not violative of Ex Post Facto Clause if it does not increase punishment, change ingredients of offense, or ultimate facts necessary to establish guilt). Thus, respondent's second assignment of error is without merit.

Affirmed.

Judges ORR and MARTIN concur.