JEANETTE ELAINE WILLIAMS

v.

COMMONWEALTH OF VIRGINIA

No. 1245-92-4

Decided May 17, 1994

Counsel

Peter W. Buchbauer (Douglas M. Swift, Jr; Jennifer R. Santa Barbara; Swift & Buchbauer, P.C., on briefs), for appellant.

Paul H. Thomson, Commonwealth's Attorney for the City of Winchester, for appellee.

Opinion

BENTON, J.—In this case we decide whether the Commonwealth could have constitutionally required Jeanette Elaine Williams, an insanity acquittee in a criminal prosecution, to prove herself not insane *and* not dangerous as a condition to her release from a mental institution. Williams contends (1) that former Code § 19.2-181(3) is unconstitutional in light of the holding in *Foucha v. Louisiana*, 504 U.S. 71 (1992), (2) that the trial judge made a decision based upon hearsay evidence, and (3) that the evidence was insufficient to clearly and convincingly prove both insanity and dangerousness. We hold that former Code § 19.2-181(3) under which the trial judge denied Williams release was unconstitutional and remand for a rehearing.

I.

In 1986, Williams was indicted on a charge of arson. Prior to trial, Williams was evaluated at a state hospital. The report to the court stated that Williams was "competent to plead and stand trial in that she does not lack substantial capacity to understand the proceedings against her or to assist in her own defense." The report further stated:

It is the opinion of the staff that the above-named defendant suffers from impulsive behavior due to an abnormal EEG (diagnosed at Western State Hospital in January, 1981), and

that when she abuses alcohol and other substances, this lowers her threshold for control and then she acts out in an immature, impulsive and usually self-destructive manner. This will also occur when she is frustrated and angry.

It is the opinion of the staff that, primarily, she should continue on the medicine that she has been receiving and stay away from alcohol and substance abuse. In order best to control this situation, it is recommended to the Court that the above-named defendant be closely monitored and tested for substance and alcohol abuse whenever she is not in custody, at irregular intervals. However, her behavior is also just impulsive when frustrated, and this is not treatable by medical means.

In December 1986, in accordance with a plea agreement, Williams pled "not guilty by reason of insanity" to the charge of arson. Consistent with the plea agreement, Williams was "commit[ted] . . . to the custody of the . . . Commissioner of Mental Health and [Mental] Retardation pursuant to [former] Code § 19.2-181(1)."

Two months later, the Department of Mental Health and Mental Retardation reported as follows:

We are of the opinion that the above-named patient remains not safe to be at large. Although she presents no florid symptoms of mental illness, still she shows periods of instability, irritability and impulsivity.

The record does not indicate that the trial judge entered a further commitment order after that report was filed as required by former Code § 19.2-181(1).

The Department filed annual reports in the circuit court stating that Williams continued to need hospitalization. In 1988, Williams filed a petition requesting release from commitment pursuant to Code § 19.2-181(4). After reports were filed, the trial judge denied that petition.

Williams filed another petition in 1992. Two doctors from the Department sent reports to the circuit court in response to the 1992 petition. Dr. Nichols's report concluded that Williams "is

neither safe nor sane at the present time, and requires continued hospitalization." Dr. Nieves reported that "symptoms observed currently are those of organic personality disorder and most likely reflect poor frustration tolerance and poor impulse control." Dr. Nieves supplemented his report to state that "Williams continues to be a chronic danger to herself and the community." The trial judge held a hearing at which no testimonial evidence was presented. Over Williams's objection, the trial judge considered the doctors' letters. Finding that Williams "was insane and . . . did present a danger to herself and to others," the trial judge denied her petition for release. Williams's appeal arises from the decision denying her 1992 petition.

## II.

At all times applicable to the proceedings in the trial court former Code § 19.2-181 was in effect.[1] Upon the acquittal of a criminal defendant by reason of insanity or mental retardation existing when the offense was committed, the trial judge was required by former Code § 19.2-181 to take the following action:

> place [the acquitted defendant] in temporary custody of the Commissioner of Mental Health, Mental Retardation and Substance Abuse Services, hereinafter referred to in this section as the Commissioner, and appoint three physicians or two physicians and one clinical psychologist, skilled in the diagnosis of insanity and mental retardation, to examine the defendant and make such investigation as they may deem necessary in order to determine whether, at the time of their examination, he is insane or mentally retarded and to determine whether his discharge would be dangerous to the public peace and safety or to himself and to report their findings to the court. Upon receipt of such report, the court shall forthwith order a hearing. If the court is satisfied by the report, or such testimony of the examining physicians or clinical psychologist as it deems necessary, that the defendant is insane or mentally retarded or that his discharge would be dangerous to public peace and safety or to himself, the court shall order him to be committed in the custody of the Commissioner. Otherwise, the defendant forthwith shall be dis-

---

[1] Former Code § 19.2-181 has been repealed and replaced by a new statutory scheme. *See* Code §§ 19.2-182.2 to 19.2-182.16.

charged and released.

Code § 19.2-181(1).

As provided by another subsection of that statute, the director of the state hospital where the insanity acquittee was committed could make application for the discharge of the insanity acquittee. Code § 19.2-181(2). In addition, the insanity acquittee could petition the circuit court at yearly intervals for release from the commitment. Code § 19.2-181(4). If the trial judge was not satisfied by the reports from the Department that the insanity acquittee should be released, the statute required the trial judge to hold a hearing, "deemed a civil proceeding," to determine the status of the insanity acquittee. Code § 19.2-181(3). The insanity acquittee was entitled to be released under the former statute only when the insanity acquittee satisfied the burden of proving that he or she was "not insane or mentally retarded and . . . not . . . dangerous to the public peace and safety or to himself." Code § 19.2-181(3).

### III.

█ Williams challenges on due process grounds the constitutionality of the statute under which she was denied release.

> The Due Process Clause "requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness.

*Jones v. United States*, 463 U.S. 354, 368 (1983).

█ The Supreme Court has stated that even if a person's initial confinement to a hospital for mental illness is permissible and made upon a constitutionally adequate basis, "there is . . . no constitutional basis for confining such persons involuntarily if they [no longer] are dangerous . . . and can live safely in freedom." *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975). Because under Virginia law an insanity acquittee has not been convicted of a criminal offense, the insanity acquittee may not be punished. *Jones*, 463 U.S. at 369. Thus, an insanity acquittee "is entitled to release when [that person] has recovered . . . sanity *or* is no longer dangerous." *Id.* at 368 (emphasis added). In other words, an

insanity acquittee "may be held as long as [she] is both mentally ill and dangerous, but not longer." *Foucha*, 504 U.S. at ____, 112 S. Ct. at 1784.

The evidence in *Foucha* proved that prior to the criminal trial, Foucha was examined and initially determined to lack the mental capacity to stand trial. Several months later, Foucha was found to be competent to stand trial. He was tried and found not guilty by reason of insanity. *Id.* at ____, 112 S. Ct. at 1782. The trial judge also found that Foucha was "presently *insane*" and committed him to a mental hospital. *Id.*

> The trial judge appointed a two-member sanity commission made up of the same two doctors who had conducted the pre-trial examination. Their written report stated that Foucha "is presently in remission from mental illness [but] [w]e cannot certify that he would not constitute a menace to himself or others if released." One of the doctors testified at a hearing that upon commitment Foucha probably suffered from a drug induced psychosis but that he had recovered from that temporary condition; that he evidenced no signs of psychosis or neurosis and was in "good shape" mentally; that he has, however, an antisocial personality, a condition that is not a mental disease and that is untreatable. The doctor also testified that Foucha had been involved in several altercations at Feliciana and that he, the doctor, would not "feel comfortable in certifying that [Foucha] would not be a danger to himself or to other people."
>
> After it was stipulated that the other doctor, if he were present, would give essentially the same testimony, the court ruled that Foucha was dangerous to himself and others and ordered him returned to the mental institution.

*Id.* at ____, 112 S. Ct. at 1782-83 (citations omitted).

■ The Supreme Court reviewed the Louisiana procedure that required a person, who was acquitted of a criminal offense by reason of insanity and committed to a psychiatric hospital, to bear the burden of proving that he or she was not dangerous in order to obtain a release from the commitment. *Id.* at ____, 112 S. Ct. at 1782. The Court held that even though the evidence proved that Foucha was a danger to himself and others, under the Due Pro-

cess Clause "keeping Foucha against his will in a mental institution is improper absent a determination in civil commitment proceedings of current mental illness *and* dangerousness." *Id.* at ____, 112 S. Ct. at 1784 (emphasis added).

## IV.

Similar to the statute in *Foucha*, the statute under which Williams was denied her release also required her to bear the burden of proving that she was not dangerous, even if she was not mentally ill. Former Code §§ 19.2-181(3) and (4) required Williams to prove that she was "not insane or mentally retarded and . . . not . . . dangerous to the public peace and safety or to [her]self." Thus, the trial judge's finding in this case was predicated upon a statutory scheme that allowed Williams to be retained in custody if she was either insane *or* dangerous. We hold that the language of the statute improperly placed upon Williams the burden of proving, even if she was not insane, that she was not dangerous. That statutory scheme is contrary to the rule announced in *Foucha*, designed to enforce the protections of the Due Process Clause. *See also In re Haynes*, 432 S.E.2d 862, 864 (N.C. App. 1993). Accordingly, we reverse the decision and remand the case to the trial judge for a new hearing in conformity with the current statute.

Because the statutory scheme has been revised since the hearing in this case, *see* Code §§ 19.2-182.2 to 19.2-182.16, we need not address the remaining issues raised by Williams.

*Reversed and remanded.*

Elder, J., and Fitzpatrick, J., concurred.