An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1403
NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014


IN THE MATTER OF:                          Catawba County
    K.I., and                              Nos. 09 JA 22-23
    A.I.
MINOR CHILDREN.


Appeal by respondent from order entered 4 September 2013 by Judge L. Suzanne Owsley in Catawba County District Court. Heard in the Court of Appeals 14 April 2014.

> *Valeree R. Adams, Staff Attorney, for petitioner-appellee Catawba County Department of Social Services.*
>
> *Administrative Office of the Courts, by Tawanda N. Foster, Appellate Counsel, for guardian ad litem.*
>
> *J. Thomas Diepenbrock for respondent-appellant.*


DAVIS, Judge.

K.W. ("Respondent") appeals from an order ceasing further efforts to reunify her with her minor children K.I. ("Karen") and A.I. ("Audrey")[1] and awarding guardianship of the children to

---

[1] Pseudonyms are used to protect the privacy of the minor children and for ease of reading. N.C.R. App. P.3.1(b).

their paternal grandparents ("Mr. and Mrs. G."). After careful review, we affirm.

## Factual Background

Karen and Audrey were born in April 2000 and January 2004, respectively, while Respondent was married to their father ("Mr. I."). The children lived with Respondent after she and Mr. I. divorced. Respondent also had custody of her son ("Calvin"), who was born in February 1998. Calvin's father ("Mr. S.") established paternity through genetic testing and was awarded legal and physical custody in July 2009.[2]

The Catawba County Department of Social Services ("DSS") became involved with Respondent's family in 1999 in response to reports of domestic violence and drug and alcohol abuse by Respondent and Mr. I. DSS received seven such reports between October 1999 and January 2009, four of which resulted in DSS providing services to Respondent.

In January 2009, DSS learned that in late 2007 or early 2008, seven-year-old Karen had disclosed multiple incidents of sexual abuse by Respondent's live-in boyfriend ("Mr. H."). Respondent told DSS and Karen that she did not believe the allegations, and she continued to allow Mr. H. unsupervised

---

[2] Calvin died in a car accident later that year.

contact with her children. Respondent denied the possibility of sexual abuse to emergency room staff who examined Karen in April 2008. When DSS offered Respondent a safety plan that required Mr. H. to leave the home, she demurred, stating that he had nowhere to go. Respondent instead suggested that her children move in with her mother, their maternal grandmother. Respondent made this proposal without revealing to DSS that she had witnessed her brother – who also resided with her mother – attempt to perform oral sex on Karen or that her brother had inappropriately touched Calvin and "was allegedly caught attempting to sodomize another child." Respondent's children stayed one night with their maternal grandmother but returned to Respondent's home after Mr. H. moved out.

On 23 January 2009, DSS filed a juvenile petition alleging that Karen was abused and all three of Respondent's children were neglected and dependent. DSS obtained non-secure custody of the children and placed Calvin with Mr. S. and the girls with Mr. and Mrs. G. After the petition was filed, Respondent told Mrs. G. "that [Respondent] was going to get a lawyer and prove that [Karen] lied and get a lie detector test for [Karen] to show that she was lying." Karen subsequently disclosed longstanding and ongoing sexual abuse by Respondent's brother.

The trial court entered an adjudication of abuse as to Karen and adjudications of neglect and dependency as to all three children in March 2009. The court cited Respondent's failure to protect Karen after being told of repeated acts of sexual abuse by Mr. H., Respondent's and Mr. I.'s history of substance abuse and domestic violence, and prior reports of a lack of supervision by Respondent. The court specifically approved Calvin's placement with his father and Karen and Audrey's placement with Mr. and Mrs. G. It later established a permanent plan for Karen and Audrey of reunification with Respondent.

The trial court granted legal custody of Karen and Audrey to Respondent on 13 July 2010 based on her progress with her case plan. In November 2012, DSS filed a motion for review, alleging that Respondent and her new husband ("Mr. W.") had become intoxicated and engaged in an act of domestic violence in front of Karen, Audrey, and one of Karen's friends. When Karen attempted to pull Mr. W. off of Respondent, he "became angry and put his arm through a glass door cutting the nerve in his right arm." The motion asserted that both sets of grandparents "have expressed concerns regarding the increased drinking by [Respondent], which has apparently increased since Mr. [W.]

moved into the home." Karen and Audrey had also "reported that their mother drinks a lot and that [Mr. W.] gets crazy and tries to hurt [Respondent]."

By order entered 24 January 2013, the trial court placed Karen and Audrey with Mr. I. pending conclusion of the hearing on DSS's motion. The court expressed "significant concerns regarding the criminal record and behaviors of [Respondent's] new husband, as well as of [Respondent]" and noted that Respondent had terminated her daughters' therapy after they were returned to her home. The court also found that Mr. and Mrs. G. had been licensed as foster parents while caring for the children in 2009 and that DSS had recently visited their home and found no concerns.

At the conclusion of the hearing on 19 February 2013, the trial court returned Karen and Audrey to DSS custody and approved placement with Mr. and Mrs. G. In addition to the domestic violence incident described above, the court found that "Mr. [W.] has a history of domestic violence" and a "significant criminal history, including" convictions for alcohol and drug offenses. Noting that Respondent "admits she has been drinking heavily[,]" the court further found that she "has demonstrated a pattern of engaging in relationships with people who engage in

violence" and "has a history of using alcohol and drugs to excess [and] . . . . of not putting the minor children first in making decisions."

After review hearings on 13 May and 5 August 2013, the trial court entered an order on 4 September 2013 relieving DSS of further efforts toward reunification and awarding guardianship of Karen and Audrey to Mr. and Mrs. G.  Respondent filed a timely notice of appeal.

## Analysis

### I. Guardianship

Respondent first claims that the trial court erred by awarding guardianship of the children to Mr. and Mrs. G. without making the determination required by N.C. Gen. Stat. § 7B-600(c).  Subsection (c) provides that the court, when appointing a guardian under the statute, must "verify that the person being appointed as guardian of the juvenile understands the legal significance of the appointment and will have adequate resources to care appropriately for the juvenile."  N.C. Gen. Stat. § 7B-600(c) (2013).  We have previously held § 7B-600(c) does not "require that the court make any specific findings in order to make the verification."  *In re J.E.*, 182 N.C. App. 612, 617, 643 S.E.2d 70, 73 (2007).

Respondent concedes that the court made the following finding in accordance with N.C. Gen. Stat. § 7B-600(c):

> The Court has conducted an inquiry of [Mr. and Mrs. G.], paternal grandparents and placement providers. They are present in court and understand the responsibilities of assuming guardianship of these children. They provided placement for the children when the children were previously before this Court. Mr. and Mrs. [G.] understand the legal significance of guardianship and have adequate resources to care for the children. . . .

She contends, however, that "the findings are not supported by competent evidence."

"All dispositional orders of the trial court after abuse, neglect and dependency hearings must contain findings of fact based upon the credible evidence presented at the hearing. If the trial court's findings of fact are supported by competent evidence, they are conclusive on appeal." *In re Weiler*, 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003) (citations omitted). We hold that the court's verification under N.C. Gen. Stat. § 7B-600(c) was supported by ample competent evidence.

Mr. and Mrs. G. attended the review hearing on 5 August 2013. The court addressed Mrs. G. directly regarding her responsibilities as a guardian. Mrs. G. agreed to limit and supervise Mr. I's contact with Karen and Audrey and acknowledged

that this responsibility would be on "a permanent [and] forever basis." Mrs. G. further confirmed her willingness to cooperate with Respondent regarding her visitation with her daughters. After reporting that "the girls are doing real well[,]" Mrs. G. expressly affirmed to the court: "I think that I can meet all the girls' needs in whatever they need, get them to the places they need to be, the things that they want to do." Though she was hopeful of changing the girls' schools, Mrs. G. expressed a willingness to "do whatever the court decides." Following this exchange, the court announced its conclusion that Mrs. G. "appears to have a good understanding of her statutory responsibility and does have the resources to be able to meet the needs of these children."

Both DSS and the guardian *ad litem* ("GAL") submitted written reports recommending that the court award guardianship of Karen and Audrey to Mr. and Mrs. G. DSS reported that both girls were doing well in the placement and felt safe in the grandparents' home. Likewise, the GAL stated: "They are receiving the structure, nurturing and safety that the[y] need and deserve." In arguing in favor of guardianship at the hearing, DSS pointed out that Mr. and Mrs. G. "are the two people that the children have known both the first time that

they were before the court and then this time."

The record before the trial court also included a "Kinship Home Study" completed by DSS in February 2009, recommending that Mr. and Mrs. G. be approved as a home placement for Karen and Audrey. Moreover, the court had overseen Mr. and Mrs. G.'s caretaking of the girls during their placements from February 2009 to January 2010 and from November 2012 until the review hearing on 13 August 2013. Such evidence and the court's findings comply with the requirements set forth in § 7B-600(c). *See J.E.*, 182 N.C. App. at 617, 643 S.E.2d at 73 (holding that trial court complied with § 7B-600(c) by receiving into evidence and considering home study reports indicating that proposed guardians "have a clear understanding of the responsibility of caring for [the juvenile]" and "are committed to raising [the juvenile] and providing for his [or her] needs regardless of what may be required").

Respondent also argues that the trial court "failed to properly find that it was in the minor children's best interest to grant guardianship [to] the paternal grandparents[.]" *See* N.C. Gen. Stat. § 7B-600(a) (2013). Section 7B-600 "permits the trial court to appoint a guardian at any time during the juvenile proceedings . . . when it finds such appointment to be

in the juvenile's best interests." *In re E.C.*, 174 N.C. App. 517, 520, 621 S.E.2d 647, 650-51 (2005). The trial court has broad discretion when determining a juvenile's best interests, *In re D.S.A.*, 181 N.C. App. 715, 720, 641 S.E.2d 18, 22 (2007), and an authorized disposition based upon such a determination "will not be disturbed absent clear evidence that the decision was manifestly unsupported by reason." *In re N.B.*, 167 N.C. App. 305, 311, 605 S.E.2d 488, 492 (2004). We also note that N.C. Gen. Stat. § 7B-903(a) prioritizes placements with a family member, a priority that extends to subsequent review hearings under N.C. Gen. Stat. § 7B-906 (2011).[3] *See In re L.L.*, 172 N.C. App. 689, 702, 616 S.E.2d 392, 400 (2005).

To the extent Respondent suggests the court did not make a determination concerning Karen's and Audrey's best interests, we deem it sufficient to quote the following language from the order:

> 3. . . . The best interests of the children require more adequate care and supervision than the parent(s) can offer.
>
> 4. The best interests of the minor children

---

[3] N.C. Gen. Stat. § 7B-906 has since been repealed by 2013 N.C. Sess. Laws 129, § 25 (June 19, 2013). However, the trial court made its determination pursuant to this section at a review hearing conducted in August 2013 before the 1 October 2013 date upon which the repeal of N.C. Gen. Stat. § 7B-906 became effective.

> will be served by entry of the following order.
>
> IT IS THEREFORE ORDERED:
>
> 1.    Guardianship of the minor children is granted to [Mr. and Mrs. G.]

Regarding Respondent's challenge to the sufficiency of the trial court's findings of fact or the evidence to support its determination, we find no merit to her claim.    The trial court made detailed findings about the case history, Respondent's protracted issues with substance abuse and domestic violence, and the children's successful placement with Mr. and Mrs. G. The court also made findings regarding the children's need for "permanence" and the guardians' understanding of their responsibilities and their capacity to meet them.    Finally, we observe that the court's assessment of the children's best interests is consistent with the recommendations of DSS and the GAL.    Accordingly, we conclude that the trial court did not abuse its discretion by awarding guardianship of the children to Mr. and Mrs. G.

**II. Failure to Schedule a Permanency Planning Hearing**

Respondent next argues the court failed to comply with the following statutory mandate:

> If the court's determination to cease reunification efforts is made in a hearing

> that was duly and timely noticed as a permanency planning hearing, then the court may immediately proceed to consider all of the criteria contained in G.S. 7B-907(b). . . . *If the court's decision to cease reunification efforts arises in any other hearing, the court shall schedule a subsequent hearing within 30 days to address the permanent plan in accordance with G.S. 7B-907.*

N.C. Gen. Stat. § 7B-507(c) (2011) (emphasis added).[4] Specifically, Respondent contends that the trial court erred because it ceased reunification efforts at a review hearing that was not duly noticed as a permanency planning hearing and "did not schedule a subsequent hearing within 30 days to address the permanent plan . . . as required by N.C. Gen. Stat. § 7B-507(c)." Rather, the 4 September 2013 order stated that "[t]his matter shall come on for a review . . . on the 28th day of October, 2013."

Our Supreme Court has made clear that "[m]andamus is the proper remedy when the trial court fails to hold a hearing or enter an order as required by statute." *In re T.H.T.*, 362 N.C. 446, 454, 665 S.E.2d 54, 59 (2008). "A writ of mandamus ensures that the trial courts adhere to statutory time frames without the ensuing delay of a lengthy appeal." *Id.* at 455, 665 S.E.2d

---

[4] Because the statute was amended effective 1 October 2013 by 2013 N.C. Sess. Laws 129, § 15, we cite the version in effect at the time of the hearing and the resultant order.

at 60. The time-sensitive nature of child welfare cases makes mandamus particularly appropriate in cases such as this, when Respondent asserts entitlement to the taking of action by the trial court within a relatively brief timeframe. *See id.* (observing that "mandamus is not only appropriate, but is the superior remedy"). Despite the expedited nature of appeals filed pursuant to N.C.R. App. P.3.1, it is apparent that appeal is not a viable means to enforce a statutory hearing deadline in juvenile abuse, neglect, and dependency proceedings. *Id.*

Moreover, during the pendency of Respondent's appeal, our General Assembly enacted amendments to Article 9 of the Juvenile Code applicable to all cases pending on or filed after 1 October 2013. *See* 2013 N.C. Sess. Laws 129. In pertinent part, these amendments repealed N.C. Gen. Stat. §§ 7B-906 and -907 and replaced them with N.C. Gen. Stat. § 7B-906.1 (2013). *Id.* at *§§* 25-26. Section 7B-906.1 eliminates the distinction between review hearings and permanency planning hearings by providing that all "[r]eview hearings after the initial permanency planning hearing shall be designated as subsequent permanency planning hearings." N.C. Gen. Stat. § 7B-906.1(a).[5] Following

---

[5] Likewise, subsection 7B-507(c) now provides that if the court ceases reunification efforts at a hearing that was not noticed as a permanency planning hearing, it must "schedule a subsequent

the initial permanency planning hearing, subsequent permanency planning hearings must now "be held at least every six months thereafter or earlier as set by the court[.]" N.C. Gen. Stat. § 7B-906.1(a). At each hearing, the trial court must assess the existing permanent plan and "make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable time." N.C. Gen. Stat. § 7B-906.1(d)(3). Therefore, in any "review" hearing conducted after 1 October 2013, the trial court was required to comply with N.C. Gen. Stat. § 7B-906.1 and make findings about the juveniles' permanent plan.

The 30-day deadline contemplated by N.C. Gen. Stat. § 7B-507(c) has long since passed given that the trial court ceased reunification efforts on 4 September 2013. Moreover, the court ordered a review hearing for 28 October 2013, after the effective date of N.C. Gen. Stat. § 7B-906.1. The 28 October 2013 hearing and any subsequent "review" hearing held after the issuance of our opinion must proceed as a "subsequent permanency planning hearing" in accordance with N.C. Gen. Stat. § 7B-906.1(a). As such, we conclude Respondent's appeal with respect

---

hearing within 30 days to address the permanent plan in accordance with G.S. 7B-906.1." N.C. Gen. Stat. § 7B-507(c) (2013).

to this issue is moot. *Cf. In re Hayes*, 111 N.C. App. 384, 388, 432 S.E.2d 862, 864 (ruling that respondent's challenge to statutory procedure for commitment hearing was moot where "he has since had the opportunity to be heard under the amended statute"), *appeal dismissed*, 335 N.C. 173, 436 S.E.2d 376 (1993).

## Conclusion

For the reasons stated above, we affirm the trial court's order ceasing reunification efforts and granting guardianship of Karen and Audrey to Mr. and Mrs. G.

AFFIRMED.

Judges HUNTER, JR. and ERVIN concur.

Report per Rule 30(e).