**IN RE L.L.**

[172 N.C. App. 689 (2005)]

IN RE: L.L., A MINOR CHILD

No. COA04-783

(Filed 16 August 2005)

**1. Appeal and Error— preservation of issues—jurisdiction**

Although petitioner Department of Social Services contends the trial court erred in a child neglect case by improperly retaining jurisdiction over the case when another judge was assigned to hear juvenile cases on that date, this issue was not properly preserved for appellate review because the parties did not object to the district court judge conducting the review hearing.

**2. Appeal and Error— preservation of issues—motion to intervene**

Although respondent parents assign error to the granting of the foster parents' oral motion to intervene at the 19 March 2003 hearing in a child neglect case, this assignment of error is dismissed because: (1) assuming arguendo that respondent father's assignment of error to finding of fact number 33 that specifically addresses the foster parents' intervention provides jurisdiction to the Court of Appeals over the issue of intervention, no party objected to the foster parents' oral request to intervene; and (2) in the absence of an objection at trial, a question may not be reviewed on appeal. N.C. R. App. P. 10(b)(1).

**3. Child Abuse and Neglect— neglect—trial court failure to comply with time limitation for filing written order**

The trial court's order following a review hearing in a child neglect case is reversed because it was not filed within the time limitation set forth in N.C.G.S. § 7B-906(d) and the nine-month delay was prejudicial because: (1) the aggrieved parties (Department of Social Services and the parents) could not appeal when there was no written order; (2) the delay was directly contrary to the permanent plan of reunification and the minor child's best interests; (3) without a filed order, there was no order with which anyone had to comply since an order entered in open court is not enforceable until it is entered; and (4) the bonding of the child with the foster parents caused by the delay will either afford the foster parents increased leverage in the best interests analysis or will cause greater trauma to the child if the plan for reunification prevails.

**IN RE L.L.**

[172 N.C. App. 689 (2005)]

**4. Child Abuse and Neglect— findings of fact—priority placement to relatives—best interests of child**

The trial court erred in a child neglect and custody case by failing to make findings to justify not giving priority in placement to the minor child's relatives, because: (1) exempting review hearings from the requirement that relatives be given first consideration risks undermining the Interstate Compact on the Placement of Children; (2) N.C.G.S. § 7B-906 incorporates the requirement under N.C.G.S. § 7B-903 that the court give first consideration to placement of a child with relatives; and (3) the trial court made no specific findings that placement with the child's relatives would not be in her best interests, but instead recites facts about the relatives and the foster parents' views without drawing any factual conclusions.

**5. Child Abuse and Neglect— findings of fact—goals of foster care placement—role foster parents should play in planning for the juvenile**

The trial court erred in a child neglect and custody case by failing to make findings of fact required under N.C.G.S. § 7B-906(c)(3) & (4) that the court address the goals of the foster care placement and the role that the foster parents should play in the planning for the juvenile since the trial court did not expressly indicate any intention to change the status of the foster parents. Even if the trial court determines on remand to change the status of the foster parents, the trial court would be required under N.C.G.S. § 7B-906(c)(9) to make findings regarding the role of the foster parents in conjunction with the existing permanent plan of reunification.

Appeal by petitioner and respondents from an order entered 21 January 2004 by Judge Marcia K. Stewart in Johnston County District Court. Heard in the Court of Appeals 2 March 2005.

*Holland & O'Connor, by W. B. Holland, Jr. and Jennifer S. O'Connor, for petitioner-appellant.*

*Richard Croutharmel for respondent-appellant mother.*

*Peter Wood for respondent-appellant father.*

*Wyrick, Robbins, Yates & Ponton, LLP, by K. Edward Greene and Kathleen A. Naggs, for intervenors-appellees.*

**IN RE L.L.**

[172 N.C. App. 689 (2005)]

GEER, Judge.

Petitioner Johnston County Department of Social Services ("JCDSS") and the parents of L.L. ("the respondents") appeal from an order of the trial court transferring custody from JCDSS to the intervenor foster parents ("the Maples"). Our review of the record suggests that the trial court and the parties may have gotten side-tracked by the dispute between JCDSS and the Maples to the point that L.L. has become less the focus of attention and more a pawn in the dispute.

Perhaps as a result, the order on appeal was filed eight months late to the prejudice of L.L., the parents, and JCDSS. For this reason, we reverse. We also hold that the trial court erred in its order by not complying with the provisions of N.C. Gen. Stat. § 7B-906 (2003) and by not explaining why it declined to give preference to the child's relatives when considering placement of the child. Accordingly, we reverse the trial court's order and remand for a new review hearing and entry of an order consistent with this opinion.

<u>Facts</u>

L.L. was born to respondents on 4 October 2002. Because respondents' first child had been removed from respondents' custody and adjudicated abused, neglected, and dependent in December 2001, JCDSS obtained custody of L.L. on 16 October 2002 pursuant to an order for nonsecure custody. On that same day, JCDSS placed L.L. with the Maples.

Following a hearing on 20 November 2002, Judge Marcia K. Stewart entered an order on 19 December 2002 adjudicating L.L. to be neglected and dependent. In the dispositional order, the court "direct[ed] the JCDSS, despite the recommendations of the agency, to work towards reunification with the parents." The court also entered an order for an expedited Interstate Compact on the Placement of Children ("ICPC") home study to explore relative placement with L.L.'s maternal great-great aunt and uncle, Gerald and Sandra Spears, in Virginia.

On approximately 30 January 2003, the Maples learned that JCDSS had changed its plan from foster care placement to relative placement with the Spears. The Maples subsequently met with the Spears to assist with L.L.'s move to the Spears' home, but the Maples—according to the trial court—"grew extremely concerned with [L.L.'s] placement with the Spears, given their age and the fact

IN RE L.L. ·

[172 N.C. App. 689 (2005)]

that they already had three other children in their custody under the age of seven and a limited family income."

On 12 February 2003, the court held a 90-day review hearing. Since JCDSS had not yet received a response from the State of Virginia regarding the home study of the Spears, the court determined that it was in L.L.'s best interest to remain in a foster care placement with the Maples. The court provided that the goal of the foster care placement was "to provide a temporary placement for the juvenile, pending reunification or location of a relative placement possibility." The court specifically stated that termination of parental rights should not be pursued because "the court determines that it is in the juvenile's best interest to continue to work towards reunification with the parents."

The 12 March 2003 90-day review hearing was continued until 19 March 2003 because the mother's attorney could not be present. At the 19 March 2003 hearing, the Maples made an oral motion to intervene that Judge Stewart granted without objection by JCDSS or the parents. The 90-day review hearing was then continued until 9 April 2003 because the guardian ad litem could not be present. A written order allowing the motion to intervene was not entered until 9 June 2004, 15 months later.

On the same day, 19 March 2003, the Maples filed petitions to terminate the parental rights of both respondent parents and to adopt L.L. On 20 March 2003, because of these petitions, JCDSS removed L.L. from the Maples' home and placed her in the care of another foster family. JCDSS filed a motion to dismiss the petitions to terminate respondents' parental rights on 7 April 2003 on the grounds that the court had ordered JCDSS to work towards reunification and that the Maples did not have standing to file the petitions.

At the 9 April 2003 hearing, Judge Franklin F. Lanier was assigned to hold juvenile court. Counsel for the Maples informed Judge Lanier that Judge Stewart, who was assigned that day to civil district court, had told him on the day before the hearing that she wanted to retain jurisdiction of the matter. Judge Lanier consulted with Judge Stewart and counsel for the parties and transferred the case to the courtroom in which Judge Stewart was presiding.

At the 9 April 2003 hearing before Judge Stewart, counsel for JCDSS, the guardian ad litem, and counsel for the parents informed the court that they had all stipulated to an order placing L.L. in the

**IN RE L.L.**

[172 N.C. App. 689 (2005)]

custody of her maternal relatives, the Spears. The Maples objected to the recommendation and the trial court then conducted a two-day hearing. At the conclusion of the hearing, on 10 April 2003, the court stated in open court that L.L. was removed from the custody of JCDSS and was placed in the custody of the Maples. The court, however, further ordered JCDSS to continue to work towards reunification with the parents and granted visitation to the parents. Judge Stewart also stated, at the close of the hearing, that she retained jurisdiction over the matter.

Although no written order had been entered, JCDSS and the parents each filed notices of appeal from the review hearing order rendered in open court. Simultaneously with its notice of appeal filed 17 April 2003, JCDSS filed a motion for a stay pending appeal, contending that granting custody to the Maples compromised the agency's ability to work towards reunification. The parents filed similar motions on 6 May 2003. On 7 May 2003, the parents also filed motions seeking recusal of Judge Stewart on the grounds that Judge Stewart had improperly retained jurisdiction of the case and also lived in the same neighborhood as the Maples.

JCDSS had noticed its motion to dismiss the Maples' petitions for termination of parental rights for hearing on 30 April 2003. On 28 April 2003, however, the Maples moved to continue that motion on the grounds "that an Order related to this matter had not been signed by the Judge as yet and the Department of Social Services has filed the enclosed Notice of Appeal which has a material effect on this action . . . ."

On 27 May 2003, Judge Stewart denied JCDSS' and the respondents' motions for a stay pending appeal. After hearing arguments of counsel, Judge Stewart "reaffirm[ed] the decision of April 9, 2003, to place the child in the home of Mr. and Mrs. Maples." She entered a single conclusion of law stating that the matter was properly before the court, was within the exclusive jurisdiction of the district court, and was properly calendared with notice to all parties. Based on that conclusion of law, she ordered that the motion for a stay pending appeal be denied. On the next day, 28 May 2003, the Maples filed amended petitions for termination of respondents' parental rights to L.L.

On 30 May 2003, Judge Stewart denied the motions for recusal in an order stating that "[c]ase law does not allow the retention of jurisdiction in a District Court case" and that "although the Intervenors in

this action, Mr. and Mrs. Maples, are nearby neighbors, the undersigned does not know them personally and has had no contact with them." She, therefore, denied the motion for recusal, but allowed the motion "that the court not retain jurisdiction."

With respect to the April 2003 review hearing, no written order was filed through the summer and fall of 2003. On 30 December 2003, JCDSS filed a notice of hearing for 14 January 2004 "for the purpose of reviewing this file and determining the best interest of the child." On 21 January 2004, the trial court entered its written order regarding the 9 and 10 April 2003 review hearing. JCDSS and the parents filed new notices of appeal from the written order.

## Discussion

### I. The Transfer of the Review Hearing to Judge Stewart.

[1] JCDSS argues that the trial court's order should be reversed because the court erred by improperly retaining jurisdiction over the case. Specifically, JCDSS asserts that Judge Stewart improperly presided over the review hearing when she had no authority to act because Judge Lanier was the judge assigned to hear juvenile cases on that date. Judge Stewart was assigned to preside over Johnston County civil district court.

JCDSS and respondents did not, however, object to Judge Stewart's presiding over the review hearing. In fact, counsel for JCDSS expressly stated that he had no objection and acknowledged that the hearing had been calendared for 9 April 2004 specifically because the parties believed it to be Judge Stewart's term of juvenile court. N.C.R. App. P. 10(b)(1) states that "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." Appellants thus did not properly preserve this issue for appellate review.

Nevertheless, JCDSS contends that because Judge Stewart was not assigned to preside over juvenile court on 9 April 2003, she lacked subject matter jurisdiction over the review hearing. The question of subject matter jurisdiction "may be raised at any point in the proceeding, and such jurisdiction cannot be conferred by waiver, estoppel or consent." *Sloop v. Friberg*, 70 N.C. App. 690, 692-93, 320 S.E.2d 921, 923 (1984).

## IN RE L.L.

[172 N.C. App. 689 (2005)]

JCDSS cites *Wolfe v. Wolfe,* 64 N.C. App. 249, 255, 307 S.E.2d 400, 404 (1983), *disc. review denied,* 310 N.C. 156, 311 S.E.2d 297 (1984), in which this Court held that an individual judge may not retain exclusive jurisdiction over a case. More recently, in *In re McLean,* 135 N.C. App. 387, 399, 521 S.E.2d 121, 129 (1999), this Court acknowledged "that as a matter of practice some trial courts have [retained jurisdiction for future hearings] for reasons of consistency and efficiency, particularly in family law cases," but pointed out that there is no express statutory authority for the practice. The Court therefore held that the trial court "erred in attempting to retain exclusive jurisdiction over future hearings in this matter and that portion of the dispositional order must be vacated . . . ." *Id.* at 400, 521 S.E.2d at 129.

Nothing in *Wolfe* or *McLean* suggests that retention of jurisdiction implicates subject matter jurisdiction. In fact, the Court in *Wolfe* found the error to be harmless, a result that is not consistent with a lack of subject matter jurisdiction. Moreover, neither *Wolfe* nor *McLean*—nor any other authority cited by JCDSS—precludes parties from consenting to a particular judge's hearing a case. *Cf. Circle J. Farm Center, Inc. v. Fulcher,* 57 N.C. App. 206, 207, 290 S.E.2d 798, 799 (1982) ("In the absence of a proper objection, an action begun in the wrong division may continue in that division to its conclusion."). Accordingly, because the parties did not object to Judge Stewart's conducting the review hearing, that issue was not properly preserved for appellate review and the assignment of error is dismissed.

## II. Order Allowing Intervention by the Foster Parents.

[2] The respondent parents assign error to the granting of the Maples' oral motion to intervene at the 19 March 2003 hearing. The respondent parents argue that allowing the Maples to intervene was not in the best interests of the child and was an abuse of discretion. As with the prior assignment of error, this issue is not properly before this Court.

The Maples contend that respondents did not file a notice of appeal with respect to the intervention order. Rule 3(d) of the North Carolina Rules of Appellate Procedure requires that the notice of appeal "designate the judgment or order from which appeal is taken." While the parties did file a timely notice of appeal with respect to the 21 January 2004 review order, this notice of appeal did not mention the order allowing intervention. At that point, there was no written order of intervention; the court had simply orally allowed the oral request for intervention. The intervention order was not entered until

IN RE L.L.

[172 N.C. App. 689 (2005)]

9 June 2004—15 months after the oral order and three months after the notices of appeal.

In order for this Court to review the order of intervention, either (1) the intervention order must have been referenced in the notice of appeal filed 20 February 2004, or (2) another notice of appeal needed to be filed following the entry of the written order. *See Stachlowski v. Stach*, 328 N.C. 276, 278, 401 S.E.2d 638, 640 (1991) (holding that rendering of judgment in open court, when oral ruling leaves no matters undetermined, is the earliest point from which a party *may* appeal while entry of the written judgment marks the beginning of the period during which a party *must* file notice of appeal). Ordinarily, because "[t]he provisions of Rule 3 are jurisdictional," the failure to notice appeal from the intervention order would "require[] dismissal of [this] appeal." *Abels v. Renfro Corp.*, 126 N.C. App. 800, 802, 486 S.E.2d 735, 737, *disc. review denied*, 347 N.C. 263, 493 S.E.2d 450 (1997).

The respondent father, however, has assigned error to finding of fact number 33 of the 21 January 2004 review order from which the appellants have properly appealed. It specifically addresses the Maples' intervention:

> While the Maples as foster parents may not advocate the position of Johnston County DSS in possibly reuniting the [parents and L.L.] or in placement with L.L.'s great-great maternal aunt and uncle in Virginia, their intervention does not prejudice the adjudication of the rights of the original parties and the best interest [sic] of the child is served by allowing them to intervene. The Maples had and continue to cooperate with the Johnston County DSS by taking the child to all scheduled visits and even volunteering to transport the child when a DSS visit had to be canceled due to weather.

Assuming *arguendo* that the father's assignment of error as to this finding provides jurisdiction in this Court over the issue of intervention, review is still precluded because no party objected to the Maples' oral request to intervene. In the absence of an objection at trial, a question may not be reviewed on appeal. N.C.R. App. P. 10(b)(1). This assignment of error is dismissed.

III. The Timeliness of the Review Hearing Order.

[3] JCDSS next argues that the trial court's order should be reversed because it was not filed within the time limitation set forth in the

**IN RE L.L.**

[172 N.C. App. 689 (2005)]

Juvenile Code. The review hearing concluded on 10 April 2003, but the court did not enter its order until 21 January 2004—over nine months after the hearing. N.C. Gen. Stat. § 7B-906(d) requires that the order following a review hearing "must be reduced to writing, signed, and entered within 30 days of the completion of the hearing." Therefore, in order to be timely filed, the order in this case should have been filed by 10 May 2003. It was eight months late.

This Court has held that a trial court's failure to adhere to the time requirements set out in certain portions of the Juvenile Code is not reversible error absent a showing of prejudice. *See In re J.L.K.*, 165 N.C. App. 311, 316, 598 S.E.2d 387, 391 (no prejudice shown by respondent parent from the entry of an order terminating parental rights 59 days late), *disc. review denied*, 359 N.C. 68, 604 S.E.2d 314 (2004); *In re E.N.S.*, 164 N.C. App. 146, 153, 595 S.E.2d 167, 171 (holding that a court's failure to enter adjudication and disposition orders in accordance with N.C. Gen. Stat. §§ 7B-807(b) and -905(a) was not reversible error because "the trial court's failure to timely enter the orders did not prejudice [respondent]"), *disc. review denied*, 359 N.C. 189, 606 S.E.2d 903 (2004).

Recently, this Court, in applying N.C. Gen. Stat. § 7B-1109 (2003), held that a delay of over six months between a termination of parental rights hearing and the resulting order was "highly prejudicial." *In re L.E.B.*, 169 N.C. App. 375, 379, 610 S.E.2d 424, 426 (2005) (emphasis omitted), *disc. review denied*, 359 N.C. 632, —— S.E.2d ——, 2005 N.C. LEXIS 698 (June 30, 2005). In *L.E.B.*, the concurring judge noted that the six-month delay required reversal because the "juveniles, their foster parents, and their adoptive parents are each affected by the trial court's inability to enter an order within the proscribed time period." *Id.* at ——, 610 S.E.2d at 428 (Timmons-Goodson, J., concurring).

Similarly, we hold that the nine-month delay in this case was prejudicial and requires reversal. First, because of the failure to enter an order, the aggrieved parties—in this case JCDSS, the mother, and the father—could not appeal. *Compare In re B.M.*, 168 N.C. App. 350, 354, 607 S.E.2d 698, 701 (2005) (finding that delay in filing a petition to terminate parental rights under N.C. Gen. Stat. § 7B-907(e) (2003) was not prejudicial since respondents could effectively appeal from the order changing the permanent plan from reunification and, therefore, "[r]espondents' right to appeal was not affected by the untimely filing"). The appellants attempted to appeal by filing notices of appeal

**IN RE L.L.**

[172 N.C. App. 689 (2005)]

after the hearing, but could not perfect the appeal because no written order existed. *Abels*, 126 N.C. App. at 803, 486 S.E.2d at 737 ("This Court is without authority to entertain appeal of a case which lacks entry of judgment.").

In addition, this delay was directly contrary to the permanent plan of reunification and L.L.'s best interests. In appeals from a termination of parental rights, there has, at least, been a judicial determination that the permanent plan should be changed from reunification to termination and a second judicial determination that the parents' rights should be terminated. Here, to the contrary, the only judicial determination has been that reunification should continue to be the permanent plan. Yet, the court failed to provide any specific direction to ensure that *all* the parties worked towards reunification instead of their own individual, adverse interests. The Maples' interests became adverse to the parents and JCDSS once they filed their petition to terminate parental rights in the face of the permanent plan of reunification. The nine-month delay in entry of the order left the parties in limbo as to exactly what the plan was to be—since the oral findings simply told JCDSS to continue to work with the parents— and also significantly delayed the date by which the child might be reunited with the parents.

Further, without a filed order, there was no order with which anyone had to comply because " 'an order rendered in open court is not enforceable until it is "entered," *i.e.*, until it is reduced to writing, signed by the judge, and filed with the clerk of court.' " *Carland v. Branch*, 164 N.C. App. 403, 405, 595 S.E.2d 742, 744 (2004) (quoting *West v. Marko*, 130 N.C. App. 751, 756, 504 S.E.2d 571, 574 (1998)). Without any written order providing direction to the Maples, the appellants had no means to compel the Maples to cooperate in reunification efforts. Mr. Maples' testimony established that such cooperation could not be taken for granted:

Q. So right here and now today, you're not willing to cooperate in any kind of reunification plan, are you?

A. I assume not if we filed termination of parental rights.

Q. In fact, really—I mean, you would be unable to do it due to your feelings and the things that led you to file these actions.

A. We feel like we didn't act any different than DSS since termination of parental rights had already been pursued with another child.

IN RE L.L.

[172 N.C. App. 689 (2005)]

Thus, given the unusual circumstances of this case and the nature of the oral order, the delay undermines the permanent plan of reunification and prejudices L.L., the parents, and JCDSS.

Although the Maples were not prejudiced by the delay, any cognizable interest of the Maples "derives from the child's right to have his or her best interests protected." *In re Baby Boy Scearce*, 81 N.C. App. 531, 541, 345 S.E.2d 404, 410, *disc. review denied*, 318 N.C. 415, 349 S.E.2d 589 (1986). Yet, because of the permanent plan of reunification, the delay may well harm L.L. Here, from the time of the review hearing until the present, L.L. has aged from being six months old to being almost three years old while living with a couple committed to adopting her and opposing reunification. As Judge Becton noted in a dissenting opinion:

> Given the tender ages of the children involved in most of these cases and the length of time it generally takes from temporary removal to termination . . . bonding between the child and the foster parents is likely to occur and is, therefore, likely to be unduly weighted when balanced against the interest of parents . . . .

*In re Webb*, 70 N.C. App. 345, 359, 320 S.E.2d 306, 314 (1984) (Becton, J., dissenting), *aff'd per curiam*, 313 N.C. 322, 327 S.E.2d 879 (1985). Because of the bonding, the delay will either afford the Maples increased leverage in the "best interests" analysis or will cause greater trauma to the child if the plan for reunification prevails. We cannot condone a mode of proceeding that risks making a termination of parental rights a *fait accompli*.

JCDSS and the parents attempted to call the potential prejudice to the attention of the trial court by moving to stay the order and preserve the status quo pending appeal. In its motion, JCDSS noted (1) that the Maples, who had been granted custody, did not support the plan of reunification and intended to adopt L.L., (2) that JCDSS was nonetheless under a duty, pursuant to the court's order, to continue efforts to reunify L.L. with her biological family, and (3) that placement in the Maples' home, pending the appeal, would compromise JCDSS' ability to work towards reunification. JCDSS also stated that "upon information and belief, if execution of the Order is not stayed, the child's IV-E eligibility funding will be affected in the future . . . ." JCDSS specifically noted that it could take one to two years for the appeal to be resolved. Not only did the trial court deny the stay, but despite the concerns expressed by JCDSS, the court further delayed any appeal by not entering its order for another eight months.

We acknowledge that the record also suggests that had JCDSS requested another review hearing earlier or petitioned for writ of mandamus, some of the delay may have been avoided. Nevertheless, the circumstances of this case demonstrate prejudice to L.L., the parents, JCDSS, and the statutorily-mandated permanency planning process. *See In re R.T.W.*, 359 N.C. 539, 547, 614 S.E.2d 489, ⸺ 2005 N.C. LEXIS 646, at *17 (July 1, 2005) (observing that "protracted custody proceedings that leave the legal relationship between parent and child unresolved and the child in legal limbo . . . thwart the legislature's wish that children be placed 'in . . . safe, permanent home[s] within a reasonable amount of time' " (quoting N.C. Gen. Stat. § 7B-100(5) (2003)). Accordingly, we reverse the order of the trial court and remand for a new review hearing.

IV. Failure to Make Adequate Findings.

We address the appellants' arguments regarding the adequacies of the order's findings of fact because the issues are likely to recur on remand. Appellants contend that the trial court erred (1) in failing to make findings to justify not giving priority in placement to L.L.'s relatives, the Spears; and (2) in failing to make findings of fact required under N.C. Gen. Stat. § 7B-906. We agree.

A. Priority Placement to Family Members.

[4] At the review hearing, appellants notified the trial court that JCDSS had received an approved ICPC home study for the Spears and that JCDSS, the parents, and L.L.'s guardian ad litem all had stipulated to placement of L.L. with the Spears. In arguing that the trial court failed to make sufficient findings of fact to support its rejection of that stipulation, appellants point to N.C. Gen. Stat. § 7B-903(a)(2)(c) (2003). N.C. Gen. Stat. § 7B-903(a)(2)(c) mandates that "[i]f the court finds that the relative is willing and able to provide proper care and supervision in a safe home, then the court shall order placement of the juvenile with the relative unless the court finds that the placement is contrary to the best interests of the juvenile." Appellants argue that the trial court's order must be reversed because the court neither placed L.L. with her relatives, the Spears, nor made any findings of fact that placement with the Spears would be contrary to L.L.'s best interests.

The Maples contend that trial courts entering orders following review hearings are not required to comply with N.C. Gen. Stat. § 7B-903(a)(2). "The primary rule of statutory construction is to ef-

## IN RE L.L.

[172 N.C. App. 689 (2005)]

fectuate the intent of the legislature." *In re Estate of Lunsford*, 359 N.C. 382, 392, 610 S.E.2d 366, 373 (2005).

N.C. Gen. Stat. § 7B-906, which the parties agree governed the hearing below, specifically provides that "[t]he court, after making findings of fact, . . . may make any disposition authorized by G.S. 7B-903, including the authority to place the juvenile in the custody of either parent or any relative found by the court to be suitable and found by the court to be in the best interests of the juvenile." N.C. Gen. Stat. § 7B-906(d). The plain language of the statute thus incorporates N.C. Gen. Stat. § 7B-903's dispositional alternatives, which, with respect to placement of the child, give priority to a suitable relative "unless the court finds that the placement is contrary to the best interests of the juvenile." N.C. Gen. Stat. § 7B-903(a)(2).

To interpret N.C. Gen. Stat. § 7B-906 in the manner urged by the Maples would be inconsistent with the overall scheme adopted by the General Assembly to comply with federal law. In 1996, in the Personal Responsibility and Work Opportunity Reconciliation Act, Congress provided that a State, as a condition for receiving federal foster care funds, must have a plan for foster care that, in pertinent part, "provides that the State shall consider giving preference to an adult relative over a non-related caregiver when determining a placement for a child, provided that the relative caregiver meets all relevant State child protection standards." 42 U.S.C. § 671(a)(19) (2003).

Consistent with that requirement, N.C. Gen. Stat. § 7B-505 (2003) (emphasis added) specifically requires that the trial court in entering a nonsecure custody order for placement outside the home "*shall* first consider whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home." If so, then "the court *shall* order placement of the juvenile with the relative unless the court finds that placement with the relative would be contrary to the best interests of· the juvenile." *Id.* (emphasis added). N.C. Gen. Stat. § 7B-506(h) (2003) (emphasis added) then provides that, following that initial order, "*[a]t each hearing* to determine the need for continued custody, the court *shall*: . . . (2) [i]nquire as to whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home." Again, "[i]f the court finds that the relative is willing and able to provide proper care and supervision in a safe home, then the court *shall* order temporary placement of the juvenile with the relative unless the court finds that placement with the relative would be contrary to

the best interests of the juvenile." *Id.* (emphasis added). As noted above, N.C. Gen. Stat. § 7B-903—setting out dispositional alternatives for abused, neglected, or dependent children—contains an identical provision. N.C. Gen. Stat. § 7B-903(a)(2). We do not believe that the General Assembly intended to require trial courts to give priority consideration to relatives in the initial nonsecure custody proceedings, at "each hearing" to determine the need for continued custody, and in dispositions for abused, neglected, or dependent children, but— despite its express reference to N.C. Gen. Stat. § 7B-903—did not intend to incorporate a similar requirement when trial courts are reviewing custody placements.

In addition, each of the statutes further provides that "[p]lacement of a juvenile with a relative outside of this State must be in accordance with the Interstate Compact on the Placement of Children," as set out in Article 38 of the Juvenile Code (the "ICPC"). N.C. Gen. Stat. §§ 7B-505, 7B-506(h)(2), and 7B-903(a)(2). Exempting review hearings from the requirement that relatives be given first consideration risks undermining the ICPC. Under the ICPC, a "child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child." N.C. Gen. Stat. § 7B-3800, Art. III(d) (2003). In other words, a child cannot be placed with an out-of-state relative until favorable completion of an ICPC home study. Further, the policies underlying the ICPC anticipate that states will cooperate to ensure that a state where a child is to be placed "may have full opportunity to ascertain the circumstances of the proposed placement" and the State seeking the placement "may obtain the most complete information on the basis of which to evaluate a projected placement before it is made." *Id.*, Art. I(b), (c).

In short, compliance with the ICPC may take time and often may not be completed until a review hearing is held, as this case demonstrates. The order for nonsecure custody was entered on 17 October 2002 and the order under N.C. Gen. Stat. § 7B-506 for continued nonsecure custody was dated 23 October 2002. On 20 November 2002, following the adjudication of L.L. as neglected and after finding that the Spears had expressed a desire and willingness to provide care for L.L., Judge Stewart entered an order for a "Priority Placement Request from the State of North Carolina to the State of Virginia, pursuant to Article III of I.C.P.C.," requesting a home study of the Spears.

If the Maples' argument were accepted, the trial court, at the point when the ICPC home study had only just been ordered, would no longer have been required to give any consideration to placement with the Spears. In fact, JCDSS did not receive the approved home study from Virginia until immediately before the April 2004 review hearing. Thus, the trial court could not have given consideration to relative placement until the very hearing at which the Maples contend consideration was no longer required.

The Maples' proposed construction of the statute thus creates a conflict between the requirements of the ICPC and the mandate for priority consideration of relatives. We can, however, avoid any such conflict by construing N.C. Gen. Stat. § 7B-906 as incorporating N.C. Gen. Stat. § 7B-903's requirement that the court give first consideration to placement of a child with relatives. *See State v. Boltinhouse*, 49 N.C. App. 665, 667-68, 272 S.E.2d 148, 150 (1980) (" 'Statutes dealing with the same subject matter must be construed in *pari materia* and harmonized, if possible, to give effect to each. Any irreconcilable ambiguity should be resolved so as to effectuate the true legislative intent.' " (quoting 12 Strong's North Carolina Index 3d, *Statutes* § 5.4, pp. 69-70)).

Accordingly, we hold that the trial court was required to first consider placing L.L. with the Spears unless it found that such a placement was not in L.L.'s best interests. The trial court's review order does not, however, include the necessary findings of fact. Although L.L.'s guardian ad litem, JCDSS, and the parents all agreed to placement with the Spears and Virginia approved the Spears for placement, the trial court's order included only two findings of fact regarding the Spears as a possible placement:

> 19. . . . As stated above, the Spears have custody of [L.L.'s] half siblings via Lenoir County DSS. Mr. Spears testified at trial that he lives in Virginia, approximately four hours away; he is 53 years old with a 12th grade education, has a deceased father and currently has 3 children, ages 7, 4 and 3 residing with he and his wife, who is not employed outside the home and who has an 11th grade education. The total family income is $30,000.00 per year.

> . . . .

> 24. After meeting with the Spears, the Maples grew extremely concerned with [L.L.'s] placement with the Spears, given their age and the fact that they already had three other children

IN RE L.L.

[172 N.C. App. 689 (2005)]

in their custody under the age of seven and a limited family income. Mr. Spears's father is already deceased and Mr. Spears would be 70 by the time [L.L.] could get a driver's license.[1]

The trial court made no specific finding that placement with Mr. and Mrs. Spears would not be in L.L.'s best interests. Further, the above findings recite certain facts about the Spears and the Maples' views, but draw no factual conclusions. *See Williamson v. Williamson*, 140 N.C. App. 362, 364, 536 S.E.2d 337, 339 (2000) (noting that "mere recitations of the evidence" are not the ultimate findings required, and "do not reflect the processes of logical reasoning" required (internal quotation marks omitted)); *Appalachian Poster Adver. Co. v. Harrington*, 89 N.C. App. 476, 479, 366 S.E.2d 705, 707 (1988) (holding that the trial court failed to find the "ultimate facts" where "[f]or the greater part, [the findings of fact] are only recitations of the evidence"). We also note that the Maples' concerns—which cannot substitute for a finding by the trial court—address the question of a permanent placement and not the question before the trial court: who should have custody pending reunification efforts?

On remand, the trial court must give first consideration to placement with the Spears. Before placing L.L. with the Maples or with anyone else, the court must make specific findings of fact explaining why placement with the Spears is not in L.L.'s best interests. *See Shore v. Norfolk Nat'l Bank of Commerce*, 207 N.C. 798, 799, 178 S.E. 572, 572-73 (1935) (holding that the trial court must specifically find the facts and cannot simply "indicate from what source the facts may be gleaned").

B. <u>Findings of Fact Required Under N.C. Gen. Stat. § 7B-906</u>.

[5] In a review hearing pursuant to N.C. Gen. Stat. § 7B-906, the trial court is required to consider the following criteria and make written findings regarding those that are relevant:

(1) Services which have been offered to reunite the family, or whether efforts to reunite the family clearly would be futile or inconsistent with the juvenile's safety and need for a safe, permanent home within a reasonable period of time.

---

1. One finding of fact does acknowledge the need to make findings regarding relative placement: "DSS Requirement [sic] to work toward relative placement priority can be followed by allowing [L.L.] to remain in this area where her only full sister lives and with whom the Maples will continue a relationship." Placement with non-relatives who live in the same area as a child's sibling does not equate to placement with a relative. This fact may, however, be a consideration in deciding L.L.'s best interests.

**IN RE L.L.**

[172 N.C. App. 689 (2005)]

(2) Where the juvenile's return home is unlikely, the efforts which have been made to evaluate or plan for other methods of care.

(3) Goals of the foster care placement and the appropriateness of the foster care plan.

(4) A new foster care placement, if continuation of care is sought, that addresses the role the current foster parent will play in the planning for the juvenile.

(5) Reports on the placements the juvenile has had and any services offered to the juvenile and the parent, guardian, custodian, or caretaker.

(6) An appropriate visitation plan.

(7) If the juvenile is 16 or 17 years of age, a report on an independent living assessment of the juvenile and, if appropriate, an independent living plan developed for the juvenile.

(8) When and if termination of parental rights should be considered.

(9) Any other criteria the court deems necessary.

N.C. Gen. Stat. § 7B-906(c).

An examination of the 23 January 2004 order reveals that the order fails to meet the requirement of N.C. Gen. Stat. § 7B-906(c)(3) & (4) that the court address the goals of the foster care placement and the role that the foster parents should play in the planning for the juvenile. The trial court ordered JCDSS to continue reasonable efforts at reunification, but at the same time granted legal and physical custody to the Maples, who had confirmed their determination to terminate the respondent parents' parental rights by amending their petitions shortly after the review hearing in which they obtained custody. Yet, the court's order imposes no requirements on the Maples at all; it does not even direct the Maples to cooperate with JCDSS in connection with the court-ordered "reasonable reunification efforts." Without specification of the goal for the placement with the Maples and the role they were to play in connection with L.L.'s permanent plan of reunification, the purposes of a permanent plan and a review hearing could not be met.

The Maples contend that N.C. Gen. Stat. § 7B-906(c)(3) & (4) were not relevant because they were no longer foster parents. The

IN RE L.L.

[172 N.C. App. 689 (2005)]

Maples rely on N.C. Gen. Stat. § 131D-10.2(8) (2003), which defines a "Family Foster Home" as "the private residence of one or more individuals who permanently reside as members of the household and who provide continuing full-time foster care for a child or children *who are placed there by a child placing agency . . . .*" (Emphasis added.) The Maples reason that they are not a "Family Foster Home" because L.L. was placed with them by the court and not by a child placing agency.

Assuming, *arguendo*, that the definitions in N.C. Gen. Stat. § 131D-10.2 are relevant to the Juvenile Code,[2] it is undisputed that L.L. was originally placed with the Maples by JCDSS, a child placing agency as defined by N.C. Gen. Stat. § 131D-10.2(4). Further, they continue to provide "foster care" within the meaning of N.C. Gen. Stat. § 131D-10.2(9):

> "Foster Care" means the continuing provision of the essentials of daily living on a 24-hour basis for dependent, neglected, abused, abandoned, destitute, orphaned, undisciplined, or delinquent children or other children who, due to similar problems of behavior or family conditions, are living apart from their parents, relatives, or guardians in a family foster home or residential child-care facility. The essentials of daily living include but are not limited to shelter, meals, clothing, education, recreation, and individual attention and supervision.

In addition, a "foster parent" is simply "any individual who is 18 years of age or older who is licensed by the State to provide foster care." N.C. Gen. Stat. § 131D-10.2(9a). The Maples have not argued that they are not "foster parents."

Our review of the trial court's order reveals no intent to alter the original status of the Maples as that of being foster parents. The ramifications of such a change of status could be profound. For example, L.L. might be denied foster care benefits under N.C. Gen. Stat. § 108A-49 (2003). Further, the Maples would no longer be regulated under Article 1A of Chapter 131D. In light of the potential consequences, we do not construe the trial court's order as making such

---

2. The definitions contained in N.C. Gen. Stat. § 131D-10.2 apply only for the purposes of Article 1A of Chapter 131D, which has the stated purpose of "assign[ing] the authority to protect the health, safety and well-being of children separated from or being cared for away from their families." N.C. Gen. Stat. § 131D-10.1 (2003). The provisions of the Article relate to licensure and other regulatory requirements for persons and entities providing foster care or placing children with residential care facilities, foster homes, or adoptive homes.

**IN RE L.L.**

[172 N.C. App. 689 (2005)]

a fundamental change, especially when the order consistently refers to the Maples as "foster parents."

Since the trial court did not expressly indicate any intention to change the Maples' status from that of foster parents, it was required to make findings of fact under N.C. Gen. Stat. § 7B-906(c)(3) & (4). Even if the trial court determines on remand that the Maples should not be considered foster parents, but should play some other currently unspecified role, the trial court would be required under N.C. Gen. Stat. § 7B-906(9), given the circumstances of this case, to make findings regarding the role of the Maples in conjunction with the existing permanent plan of reunification. The order itself establishes the ongoing animosity between JCDSS and the Maples. The order must provide a workable plan for all parties to cooperate in achieving L.L.'s best interests.

On remand, we remind all parties that policing a game of tit-for-tat between a Department of Social Services and foster parents is not the function of a review hearing. Nor should disagreement with an agency's policies, practices, or casework distract from L.L.'s best interests. Our review of the review hearing order indicates that more than a third of the 38 findings of fact relate in whole or in part to a discussion of JCDSS' treatment of the Maples, the effect of JCDSS' actions on the Maples, the Maples' beliefs regarding their ability to adopt, or disapproval of JCDSS. Significantly, L.L.'s guardian ad litem is only mentioned in fleeting fashion, with no description of his recommendation and no explanation as to why the court found the guardian ad litem's recommendation not to be worthy of consideration or, alternatively, entitled to less weight than the views of the Maples. The guardian ad litem is, however, appointed and present solely to represent L.L.'s best interests.

Reversed and remanded.

Judges McGEE and TYSON concur.