IN RE: I.N.B., T.N.B., D.N.B.
No. COA09-742
Court of Appeals of North Carolina
Filed October 20, 2009
This case not for publication
J. Hal Kinlaw, Jr., for petitioner-appellee Robeson County Department of Social Services.
Richard E. Jester, for respondent-appellant father.
Annick Lenoir-Peek, for respondent-appellant mother.
Pamela Newell Williams, for appellee Guardian ad Litem.
MARTIN, Chief Judge.
Respondent-mother and respondent-father are the parents of four minor children, I.N.B. ("Isaac"), T.N.B. ("Teresa"), D.N.B. ("David"), and A.S. ("Adam").[1] On 4 January 2007, the Robeson County Department of Social Services ("petitioner") filed juvenile petitions alleging that Teresa was an abused and neglected juvenile and that Isaac and David were neglected juveniles. Petitioner obtained nonsecure custody of the three juveniles that same day. After a hearing on the petitions on 14 June 2007, the trial court entered an order finding that Teresa was an abused and neglected juvenile, and that Isaac and David were neglected juveniles. The court continued custody of the juveniles with petitioner.
Adam was born on 16 June 2007 and petitioner took custody of him two days later. See In re A.S., 190 N.C. App. at 682, 661 S.E.2d at 315. The trial court entered an order adjudicating Adam as neglected and placed him in petitioner's custody on 24 August 2007. See id. at 682, 661 S.E.2d at 315-16. While Adam has been involved in prior appeals, he is not involved in the instant appeal.
On 11 March 2008, following a hearing on 13 February 2008, the trial court entered an order awarding guardianship of Isaac, Teresa, and David to a non-relative couple, Lawrence and Melanie Harvey ("the Harveys"). The court allowed respondent-father to have unsupervised visitation with the three juveniles every other Saturday for nine hours, and did not allow respondent-mother to have any visitation with the three juveniles. Respondents appealed from this order and, after finding the trial court failed to make "its own findings of fact based upon the reports and any testimonial evidence received," this Court vacated the order and remanded for further proceedings. See In re I.N.B., ___ N.C. App. ___, 666 S.E.2d 890 (2008) (unpublished).
On remand, the trial court held a hearing in the cases of Isaac, Teresa and David on 25 March 2009. The court took no new evidence and rendered a new opinion based upon the evidence received at the 13 February 2008 hearing. The trial court entered its new permanency planning order on 1 April 2009. The court found petitioner had made reasonable efforts to eliminate the need for placement of the juveniles, established the permanent plan for the juveniles as guardianship, and awarded guardianship of the three juveniles to the Harveys. The court also reduced respondent-father's visitation with the three juveniles to supervised visitation on Sundays, and again did not allow respondent-mother to have visitation with the three juveniles. Respondent-mother and respondent-father filed notices of appeal from this order on 15 April 2009 and 23 April 2009, respectively.
On appeal, "review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and [whether] the findings support the conclusions of law." In re J.C.S., 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004), overruled on other grounds by In re R.T.W., 359 N.C. 539, 614 S.E.2d 489 (2005). "If the trial court's findings of fact are supported by any competent evidence, they are conclusive on appeal." Id. "The trial court's conclusions of law are reviewable de novo on appeal." In re D.H., C.H., B.M., C.H. III, 177 N.C. App 700, 703, 629 S.E.2d 920, 922 (2006) (internal quotation marks omitted).
Respondent-mother first contends the trial court erred in adopting guardianship as the permanent plan for the juveniles and in awarding guardianship of the three juveniles to the Harveys. She argues the trial court did not make adequate findings pursuant to N.C.G.S. § 7B-600(c), which requires that the guardians understand the legal significance of their appointment and have adequate resources to care for the juveniles. Respondent-mother also argues the trial court erred in granting guardianship of the juveniles to the Harveys without first adequately pursuing placement with a relative. We address each argument in turn below.
The North Carolina Juvenile Code requires that, where a trial court appoints a guardian of the person of a juvenile pursuant to N.C.G.S. § 7B-600, "the court shall verify that the person being appointed as guardian of the juvenile understands the legal significance of the appointment and will have adequate resources to care appropriately for the juvenile." N.C. Gen. Stat. § 7B-600(c) (2007). Similarly, where the trial court sets guardianship as the permanent plan for a juvenile and appoints a guardian of the juvenile, the court "shall verify that the person . . . being appointed as guardian of the juvenile understands the legal significance of the . . . appointment and will have adequate resources to care appropriately for the juvenile." N.C. Gen. Stat. § 7B-907(f) (2007).
Here, the trial court found:
31. That, pursuant to N.C.G.S. 7B-600(c), the Court verified that Lawrence and Melanie Harvey . . . at the February 13, 2008 hearing understood the legal significance of being appointed as guardians for these children and the Court certified that these people had adequate resources to care appropriately for these juveniles.
However, at the 13 February 2008 hearing, the Harveys did not appear and so did not give testimony regarding their resources or understanding of the legal significance of being appointed as guardians for the juveniles. Further, although the trial court did accept into evidence some exhibits offered by petitioner, described only as "various reports and other documents" in the trial court's order, it is entirely unclear what those exhibits were or whether they would support the findings of the trial court. We note that the record on appeal contains forms "releas[ing]" petitioner from "[a]ll responsibility" related to each juvenile, which were signed by the trial judge and Mr. and Mrs. Harvey, stating that, on 13 February 2008, the Harveys appeared before the trial court and "acknowledged to assume the responsibility" of the juveniles. While the releases may be sufficient to show the Harveys understood the legal significance of their appointment, there is nothing to show that they have adequate resources to care for the juveniles. Accordingly, the trial court's Finding of Fact 31 excerpted above is unsupported by evidence in the record before this Court, and we hold the trial court failed to comply with the mandates of N.C.G.S. § 7B-600(c).
Respondent-mother further argues that the trial court erred in granting guardianship of the juveniles to the Harveys without adequately pursuing placement with a relative. N.C.G.S. § 7B-903 provides, in part:
In placing a juvenile in out-of-home care under this section, the court shall first consider whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home. If the court finds that the relative is willing and able to provide proper care and supervision in a safe home, then the court shall order placement of the juvenile with the relative unless the court finds that the placement is contrary to the best interests of the juvenile. In placing a juvenile in out-of-home care under this section, the court shall also consider whether it is in the juvenile's best interest to remain in the juvenile's community of residence.
N.C. Gen. Stat. § 7B-903(a)(2)(c) (2007) (emphasis added); see also In re L.L., 172 N.C. App. 689, 700-04, 616 S.E.2d 392, 399-401 (2005) (holding that before the trial court could place a juvenile with non-relatives, the trial court was required to enter specific findings of fact explaining why placement with the relatives was not in the best interest of the juvenile).
In the instant case, the trial court's Findings of Fact 23, 24, 32, and 33 implicate whether placement with a relative was in the best interest of the juveniles. In Finding of Fact 23, the trial court found, "[t]hat in July 2007 a babysitter was changing [Teresa's] compression socks and asked [Isaac] who burned [Teresa's] feet; that [Isaac] replied, `My daddy.'" The only evidence supporting the trial court's Finding of Fact 23 comes from a report from the guardian ad litem dated 25 July 2007 and from a report by a social worker dated 24 July 2007. The guardian ad litem report contains a section entitled "Foster Parent Contact," which states in whole:
The foster parents have kept in contact concerning the children. There was an incident when [Mrs. Harvey's] mother was putting lotion on [Teresa's] feet and she asked [Isaac] who hurt [Teresa's] feet and he stated "Daddy". The foster parents were very concerned because in the beginning [Isaac] was not able to talk when he first came into care but is now able to.
It is unclear whether this report was presented as evidence at the 13 February 2008 hearing or was otherwise before the trial court. Even assuming arguendo that the report was before the trial court, it is impossible to judge its reliability. The young child made the statement out of the presence of the trial court, and while the trial court may consider hearsay evidence at a permanency planning hearing, the evidence must be reliable. N.C. Gen. Stat. § 7B-907(b) (2007) ("The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition."). It is unclear whether the guardian ad litem was present at the time of the alleged statement by Isaac, or if the statement was relayed to the guardian ad litem by Mrs. Harvey, Mrs. Harvey's mother, or some other person who may or may not have been present when the statement was allegedly made. The report of the social worker contains a similar item stating:
Worker was informed by Ms. Melanie Harvey on 7/2/07 that [Isaac] informed their babysitter after she was changing [Teresa's] socks and she asked him who burnt [Teresa's] feet and [Isaac] stated "My Daddy".
Again, it is unclear whether this report was presented as evidence at the 13 February 2008 hearing or was otherwise before the trial court. While this report indicates the alleged statement was relayed to the social worker by Mrs. Harvey, it is unclear whether Mrs. Harvey heard the statement directly or if it was relayed to Mrs. Harvey by the unidentified babysitter. In addition, there is nothing in the record before this Court indicating that petitioner followed up on this allegation of child abuse by respondent-father. Even assuming Isaac actually made this statement, the trial court found it to be unbelievable when it concluded that the "only reasonable explanation for the severe burns inflicted on [Teresa] is that [respondent-mother] intentionally placed [Teresa] in hot water."
In Finding of Facts 24 and 33, the trial court found:
24. That [respondent-father] has continued to assert that he was in Mexico at the time [Teresa's] injuries were inflicted; the father is back in North Carolina but he continued to support the mother and believed it was an accident; that he also was considered for placement but neither he nor the children's grandmother can be reasonably expected to prevent [respondent-mother] from having unsupervised contact with the children.
. . . .
33. That the return of the children to their parents, or either of them, poses unacceptable risks to their future safety and the only way to protect the children is to awarded [sic] guardianship to non-relatives; that the Court finds this to be the case because of the evidence presented to the Court during the pendency of these proceedings establishing the likelihood that the father and other relatives will not keep the mother away from these children and will thus expose them to additional risk or neglect and abuse.
From the record before this Court, there is no evidence supporting a finding that respondent-father was anywhere other than in Mexico at the time Teresa's injuries were inflicted. At the 13 February 2008 hearing, the following occurred during cross-examination of the sole witness, Shelia Smith, a social worker employed by petitioner:
Q. So, ma'am, in the beginning when this incident occurred that brought this to the juvenile court, [respondent-father] was not in the U.S. at that time, is thatto the best of your knowledge?
A. According to [respondent-father], that's what he stated.
Q. And at an earlier time, some evidence was presented that demonstrated that there was evidence to show that he was outside of North Carolina, is that correct?
A. He showed a copy of, I think, a plane ticket.
Q. And when the investigation first began, [respondent-father] was not in the home, is that correct?
A. According to him.
Ms. Smith's response, "According to him," indicates petitioner did not believe that respondent was not in the home; however, there is no evidence to suggest otherwise.
Similarly, there is no evidence to suggest that neither respondent-father, nor the paternal grandmother could be expected to prevent respondent-mother from having unsupervised contact with the children. While respondent-father appears to have initially supported the respondent-mother and stated that he believed it was an accident, there was no evidence that he still supported her. Again, the evidence presented by Ms. Smith at the hearing indicated respondent-mother was not living with respondent-father, and that respondent-mother actually moved out at the request of respondent-father when it became clear that her presence in his home was an impediment to the return of the juveniles to his care. There is no evidence indicating that respondent-father or the paternal grandmother would allow the respondent-mother to have any unauthorized, let alone unsupervised, contact with the juveniles. Indeed, Ms. Smith testified that respondent-father had not shown any behavior or any type of conduct inconsistent with fully complying with every request petitioner had made of him.
In Finding of Fact 32, the trial court found:
32. That the irrational fear of water expressed by [Isaac] and [David] leads the Court to believe that the incident of December 22, 2006 was not an isolated event; that even if [respondent-father] was in Mexico on December 22, 2006 the Court finds that it is highly likely that he failed to protect the children from abuse or neglect on other occasions; that the Court finds this to be the case because all three of the children exhibited an irrational fear of water that would not have existed due only to burns inflicted to [Teresa] on a single occasion when, according to the mother, neither of the other two children were present to witness the injuries.
This finding that it is "highly likely" that respondent-father failed to protect the juveniles from abuse or neglect on other occasions is entirely unsupported by any evidence in the record. Ms. Smith testified that at the time of the 13 February 2008 hearing, Isaac and Teresa had been involved with Child Developmental Services ("CDSA"), but, because of their age, their therapy had only involved speech, physical therapy, and play therapy. According to a guardian ad litem report, Daniel, the youngest of the three, also received services from CDSA. CDSA did not address issues regarding fears of tubs or water with the juveniles. Ms. Smith testified that she attempted to have the children interviewed regarding their fears of water and bathtubs, but had not actually done so. The finding that the children's "irrational fear of water" is based on previous instances of abuse is nothing more than speculation on the part of the trial court, as there is no evidence that indicates otherwise. Accordingly, the trial court's findings of fact do not support its conclusion that it is in the best interests of the juveniles to be placed in a non-relative placement.
Respondent-mother next argues the trial court erred in ceasing her visitation and modifying respondent-father's visitation. We note first that respondent-mother may not appeal the issue of the trial court's change to respondent-father's visitation rights as she is not an aggrieved party to the trial court's action regarding his visitation rights. See In re J.B., 172 N.C. App. 1, 8, 616 S.E.2d 264, 269 (2005) ("Only a party aggrieved may appeal from an order or judgment of the trial division. An aggrieved party is one whose rights have been directly and injuriously affected by the action of the court." (citation and internal quotation marks omitted)). Regarding the cessation of respondent-mother's visitation, she contends the trial court's change was "capricious and arbitrary" when all the evidence showed that her visits with the juveniles were "going well." "This Court reviews the trial court's dispositional orders of visitation for an abuse of discretion." In re C.M., 183 N.C. App. 207, 215, 644 S.E.2d 588, 595 (2007). An abuse of discretion occurs when a trial court's ruling is "so arbitrary that it could not have been the result of a reasoned decision." White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).
In the adjudication and disposition order entered 5 July 2007, the trial court did not specifically address respondent-mother's visitation rights. After the 13 February 2008 permanency planning hearing, the trial court, in its 11 March 2008 order, ceased respondent-mother's visitation with the three juveniles. Upon remand after this Court's opinion vacating that order, on 1 April 2009, the trial court again ordered that respondent-mother shall not be allowed to visit with the three juveniles.
We hold the trial court's cessation of respondent-mother's visitation with the juveniles to be an abuse of its discretion. The trial court found that the adoption of the juveniles and termination of parental rights "should not be pursued at this time." At the hearing, petitioner's sole witness testified that the respondent-mother maintained contact with the juveniles through visitation and had consistently visited with the juveniles "[f]rom day one." Further, the reports in the record on appeal from the guardian ad litem and petitioner's social workers state that visits had gone well, that the juveniles had "a very good bond with [respondent-mother]," and that the foster parents were working well with the parents during the visits and had stated that they would continue to allow the parents to visit with the children. There is no evidence to support the trial court's cessation of all visitation by respondent-mother with the juveniles. Accordingly, we reverse the order of the trial court ceasing respondent-mother's visitation with the juveniles and remand for a new hearing.
Respondent-mother also argues the trial court erred by failing to ensure that petitioner used reasonable efforts in reunifying the juveniles with their parents. We agree.
"Reasonable efforts" are defined by statute as:
The diligent use of preventive or reunification services by a department of social services when a juvenile's remaining at home or returning home is consistent with achieving a safe, permanent home for the juvenile within a reasonable period of time. If a court of competent jurisdiction determines that the juvenile is not to be returned home, then reasonable efforts means the diligent and timely use of permanency planning services by a department of social services to develop and implement a permanent plan for the juvenile.
N.C. Gen. Stat. § 7B-101(18) (2007). Here, the trial court found:
40. [Petitioner] has in fact made reasonable efforts to prevent or eliminate the need for placement of the juveniles outside of the home of their parents; that [petitioner] has offered parenting classes to parents, psychological evaluations and provided the parents with opportunities to visit with the children.
This finding of fact is supported by evidence in the record. However, the record is replete with the failings of petitioner to timely develop and implement a permanent plan for the juveniles. In the trial court's initial adjudication and disposition order entered 5 July 2007 and review orders of 19 September and 16 November 2007, the trial court ordered that respondent-mother needed to attend parenting classes, participate and follow all recommendations of the class, complete a psychological evaluation and follow all recommendations. Respondent-mother, however, had completed her parenting classes on 30 March 2007, and completed her psychological evaluation on 19 April 2007, prior to the initial adjudication and disposition order. Similarly, respondent-father completed a psychological evaluation on 19 April 2007, even though none of the orders of the trial court in the record before this Court state that he had to complete a test of any sort. It is unclear what efforts, other than providing supervised visits, petitioner made subsequent to the initial offering of parenting classes and psychological evaluations.
In addition, on 16 November 2007, the trial court ordered petitioner to conduct a home study of respondent-father's home to confirm that respondent-mother was not living in the home. There is nothing in the record indicating petitioner ever completed this study. In fact, at the 13 February 2008 hearing, the social worker for this case testified that she had not been inside of the home since the juveniles had been removed. Thus, while petitioner had offered the respondents parenting classes and psychological evaluations, and had provided them with opportunities to visit with the children, petitioner has not used reasonable efforts in reunifying the juveniles with their parents. Thus, the trial court erred in so finding.
Respondent-father argues the trial court erred in granting guardianship of the juveniles to non-relative guardians without finding that he has acted inconsistently with his constitutional right to parent his children. We agree.
This Court has stated that, "to apply the best interest of the child test in a custody dispute between a parent and a nonparent, a trial court must find that the natural parent is unfit or that his or her conduct is inconsistent with a parent's constitutionally protected status." In re B.G., ___ N.C. App. ___, ___, 677 S.E.2d 549, 552 (2009) (citing Price v. Howard, 346 N.C. 68, 79, 484 S.E.2d 528, 534 (1997) (holding the "best interest of the child" test may be applied without offending due process rights if the court also finds conduct inconsistent with a parent's constitutionally protected status)). Here, the trial court did not make a specific finding that respondent-father was unfit or acted inconsistently with his constitutionally protected status. As discussed above in our analysis of whether placement with a relative was in the best interests of the juveniles, the trial court's only findings of fact from which this Court could infer respondent-father was unfit or acted inconsistently with his constitutionally protected status are unsupported by evidence in the record before this Court.
Respondent-father further attacks numerous findings of fact made by the trial court. He notes that the trial court found that Dr. Desmond Runyon testified regarding the burns on Teresa's feet; however, the only witness who testified at the 13 February 2008 hearing was a social worker employed by petitioner. Respondent-father also points out that the trial court found "by the time of the adjudication hearing[,] the parents of the juveniles . . . had only minimally complied with the case plan in this matter." But, based upon the record before this Court, it is unclear what the case plan for respondent-father involved, what he had to do to comply with any such case plan, and how he only "minimally" complied with the plan. As best as this Court can determine, respondent-father's sole failing is that he initially believed respondent-mother could not have intentionally harmed Teresa. Whether respondent-father still holds this belief, and when it may have changed, is unclear. However, the evidence at the hearing suggests he removed respondent-mother from their house and she no longer lives with him and his mother.
We also note the orders in this case are consistently unclear about how the respondents have failed to make reasonable progress in correcting the conditions that led to the juveniles' removal from their home. The court's only finding in the present order relating to how the respondents have failed to make reasonable progress states:
37. That the parents have failed to make reasonable progress in correcting those conditions that led to removal of the juveniles from the custody of their parents in that they have not disclosed the identity of the person who burned [Teresa's] feet and who caused all three children to be irrationally afraid of water and bathtubs.
All of the evidence indicates that respondent-father was in Mexico at the time Teresa's feet were burned, and that there is nothing suggesting he knows who burned Teresa's feet or knows of the cause of the juveniles' alleged fear of water and bathtubs. Accordingly, we hold none of the trial court's findings of fact indicate that respondent-father was unfit or acted inconsistently with his constitutionally protected status. Therefore, the trial court erred in awarding guardianship of the juveniles to the Harveys.
Reversed and remanded for a new hearing.
Judges ELMORE and BEASLEY concur.
Report per Rule 30(e).
NOTES
[1] Initials and pseudonyms are used to protect the identity of the juveniles. These pseudonyms are the same we employed in our prior opinions involving these juveniles. See In re I.N.B., ___ N.C. App. ___, 666 S.E.2d 890 (2008) (unpublished); In re A.S., 190 N.C. App. 679, 661 S.E.2d 313 (2008).