INMAN, Judge.
*346 Respondent-father appeals from the trial court's "Review and Permanency Planning Review Order" placing his sons E.R. ("Elvin") and E.R. ("Ervin")[1] in the guardianship of non-relatives Mr. and Mrs. B. Petitioner-appellee Swain County Department of Social Services ("DSS") and the guardian ad litem ("GAL") concede that the court erred by failing to make findings of fact regarding a potential placement for the two boys with their paternal grandmother, as required by N.C. Gen. Stat. § 7B-903(a)(2)(c) (repealed effective Oct. 1, 2015) and N.C. Gen. Stat. § 7B-903(a1) (effective Oct. 1, 2015). See N.C. Sess. Laws 2015-136, §§ 10, 18 (July 2, 2015).[2] Because we concur with the parties, we reverse the order in pertinent part and remand for further proceedings.
Elvin and Ervin are the minor children of respondent-father and respondent-mother, who are unmarried. Respondent-mother has a third son I.L. ("Ivan") by another father. Ivan is an enrolled member of the Eastern Band of Cherokee Indians ("EBCI"). Elvin and Ervin are eligible for tribal membership but remained unenrolled at the time of these proceedings. Accordingly, the trial court has determined "[t]hat the Indian Child Welfare Act [ ('ICWA') ] applies in this matter." See 25 U.S.C.S. § 1903(4) (2016) (defining "Indian child" for purposes of the ICWA as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe").
*104 On 13 June 2014, DSS filed petitions alleging that Elvin, Ervin, and Ivan were neglected juveniles, in that they did not receive proper care, supervision, or discipline and lived in an environment injurious to their *347 welfare.[3] The petitions described, inter alia , a history of domestic violence and drug use by respondents in the presence of the children, and noted that Ivan's father was incarcerated. Although respondent-mother had agreed to place the children in kinship care with Ivan's paternal cousin ("Mrs. B.")[4] and her husband ("Mr. B.") on 4 April 2014, DSS alleged that she and respondent-father subsequently failed to cooperate with in-home services offered by the department.
The trial court adjudicated the three children to be neglected juveniles on 2 March 2015. In its dispositional order entered 16 July 2015, the court continued the children's kinship placement with Mrs. B. and ordered respondents to submit to drug screens, work on their case plans, and cooperate with DSS in completing the application for Elvin and Ervin to enroll as members of the EBCI.
After a hearing on 28 September 2015, the trial court entered a "Review and Permanency Planning Review Order" on 12 November 2015, finding that respondent-mother and both fathers had failed to address their substance abuse issues or maintain regular contact with DSS. The court further found that respondent-father was incarcerated for failure to register as a sex offender, and Ivan's father was incarcerated for violating his parole. Citing the success of the kinship placement, the court determined that it was in the best interests of Elvin, Ervin, and Ivan to change their permanent plan from reunification to guardianship with Mr. and Mrs. B. The court relieved DSS of further reunification efforts and appointed Mr. and Mrs. B. as guardians of the three children.
Respondent-father filed timely notice of appeal from the order. He now contends that the trial court violated N.C. Gen. Stat. § 7B-903(a1) by awarding guardianship of Elvin and Ervin to non-relatives without properly considering a proposed relative placement with their paternal grandmother. DSS and the guardian ad litem have communicated to this Court their concession to the error assigned by respondent-father.
Section 7B-903 of the Juvenile Code prescribes the dispositional alternatives available to the trial court following an adjudication of juvenile abuse, neglect, or dependency. N.C. Gen. Stat. § 7B-903 (2015). Subsection (a1) of this statute provides, inter alia , as follows:
*348 In placing a juvenile in out-of-home care under this section, the court shall first consider whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home. If the court finds that the relative is willing and able to provide proper care and supervision in a safe home, then the court shall order placement of the juvenile with the relative unless the court finds that the placement is contrary to the best interests of the juvenile....
N.C. Gen. Stat. § 7B-903(a1). This Court has held that the priority accorded to an available relative placement under N.C. Gen. Stat. § 7B-903(a1) applies to all subsequent review and permanency planning hearings, not just the initial dispositional hearing. See In re L.L. , 172 N.C.App. 689, 700-03, 616 S.E.2d 392, 399-401 (2005) (construing earlier version of N.C. Gen. Stat. § 7B-903 and precursor statute to N.C. Gen. Stat. § 7B-906.1 (2015) governing permanency planning hearings, N.C. Gen. Stat. § 7B-906 ). We have further held that the trial court's "[f]ailure to make specific findings of fact explaining the placement with the relative is not in the juvenile's best interest will result in remand." In re A.S. , 203 N.C.App. 140, 141-42, 693 S.E.2d 659, 660 (2010) (citing In re L.L. , 172 N.C.App. at 704, 616 S.E.2d at 401 ).
The parties agree that Mr. and Mrs. B. are non-relatives of Elvin and Ervin. Mrs. B. is *105 related to Ivan's father.[5] The GAL submitted a written report to the trial court at the 28 September 2015 hearing. Finding its contents "uncontroverted," the court adopted the entirety of the GAL report "by direct reference" as findings of fact in its written order. Inter alia , the GAL reported having met with the paternal grandmother on 24 July 2015 while she visited with Elvin and Ervin at their great-grandmother's house. The paternal grandmother informed the GAL "that she would like custody of the two ... boys and felt it would be best for [Ivan] and [Elvin] not to be living together and competing all the time."[6] Mrs. B. testified that Elvin and Ervin's paternal grandmother assists her by babysitting the boys and speaks with Mrs. B. about them "[a] lot."
The DSS report admitted into evidence at the hearing further states that respondent-father "stated that he would like his children to go to his *349 mother" during a meeting with the social worker on 7 August 2015. The social worker confirmed when cross-examined by respondent-father's counsel at the 28 September 2015 hearing:
Q. Has my client made you aware of his preference for there to be a kinship placement with his mother?
A. Yes, sir.
Q. And have you looked into whether she's suitable for that placement?
A. Yes, sir. We did. We contacted the Centralized Department of Children and Families, I believe, in Tennessee to try and get a home study done and they said that we would have to submit an ICPC [7 ] in order to make that happen.
Q. And is there a reason the ICPC has not been submitted?
A. I was informed that it would be-because the state does not have custody of the children, that the judge would have to sign off on that ICPC form making the judge financially responsible and so that was something that we weren't exactly sure how to proceed on.
....
Q. Are you waiting for guidance as to how to fulfill that requirement?
A. Yes, sir.
But cf. In re J.E. , 182 N.C.App. 612, 616, 643 S.E.2d 70, 73 (2007) (holding that former permanency planning statute N.C. Gen. Stat. § 7B-907(c) (repealed effective Oct. 1, 2013)[8] and guardianship statute N.C. Gen. Stat. § 7B-600(c) (2015) make the ICPC inapplicable to an award of guardianship to an out-of-state relative in a permanency planning review order).
James Burch Sanders, ICWA coordinator for the EBCI, testified as an expert in Indian culture and child rearing. Mr. Sanders affirmed that the existing placement with Mr. and Mrs. B. met the requirements of *350 the ICWA and that he believed awarding guardianship to Mr. and Mrs. B. was in the children's best interests. On cross-examination, however, Mr. Sanders acknowledged that he had lacked sufficient information to assess Elvin and Ervin's potential placement with their paternal grandmother.
Elvin and Ervin's paternal grandmother attended the hearing but did not testify. At the conclusion of the hearing, counsel for respondent-father explicitly argued that "[m]y client's children are entitled to have my client's mother considered for guardianship of [Ervin] and [Elvin]." After hearing from all parties' counsel, the trial court rebuffed an offer by respondent-father's counsel to present the paternal grandmother as a witness:
MR. HASELKORN: Your Honor, to the degree-
THE COURT: -in closing.
*106 MR. HASELKORN:-it would help you in making your decision, my client's mother, [the paternal grandmother] is here-enough to call her to the stand.
[DSS COUNSEL]: Objection, Your Honor.
THE COURT: I think we're-with all due respect, Mr. Haselkorn, I gave your client an opportunity-not you, but I gave your client an opportunity to present evidence and your client at the time made the decision that he did not wish to put on any evidence, so we can't-
[RESPONDENT-MOTHER'S COUNSEL]: Thank you, Your Honor.
THE COURT:-go back on that.
The trial court then made the following written findings related to the guardianship award:
25. That the [B.] family provides a safe, stable home for the minor children. [Mr. and Mrs. B.] have 2 children of their own, ages 18 and 14.
....
27. That both Mr. and Mrs. [B.] can provide the necessary financial support for each of the minor children in this case.
*351 ....
29. ... Mr. Sanders is satisfied with the juveniles' placement at the [B.s'] home. He has opined that the three juveniles require permanency at this time.
....
31. That it is in the best interest of the minor children that the permanent plan be changed to guardianship with [Mr. and Mrs. B.]
The order's only reference to Elvin and Ervin's paternal grandmother appears in the following decretal provision: "the paternal grandmother of [Elvin and Ervin] may continue to be used as a resource for childcare of those minor children."
We now join the parties in concluding that the trial court's "[f]ailure to make specific findings of fact explaining [why] the placement with the [paternal grandmother] is not in [Elvin and Ervin's] best interest" requires this Court to reverse the order as to respondent-father's children and remand for a new hearing. In re A.S. , 203 N.C.App. at 141-42, 144, 693 S.E.2d at 660, 662. We recognize that the court was duly mindful of its responsibilities under the ICWA. See, e.g. , 25 U.S.C.S. § 1915(b) (2016). Indeed, because the court ended a voluntary kinship placement arranged by respondent-mother and DSS and placed the children in guardianship, "the proceeding qualifies as a 'foster care placement' and thus, a 'child custody proceeding' " subject to the ICWA. In re E.G.M. , 230 N.C.App. 196, 199, 750 S.E.2d 857, 860 (2013). Such concerns, however, do not obviate the need for findings of fact under N.C. Gen. Stat. § 7B-903(a1) if the court chooses a nonrelative placement for a juvenile.
REVERSED AND REMANDED IN PART.
Judges CALABRIA and DILLON concur.

The parties stipulated to the use of these pseudonyms to protect the juveniles' privacy. In his brief to this Court, respondent-father refers to the younger of his two boys as Ervin.

The hearing that resulted in the order was held on 28 September 2015, prior to the effective date of N.C. Sess. Laws 2015-136, § 10. The court entered its order on 12 November 2015, after the law's effective date. Because the substance of the relevant provisions are identical, we will refer to the current version of the statute, N.C. Gen. Stat. § 7B-903(a1), for purposes of our discussion.

Although the record on appeal lacks a copy of the petition filed in 14 JA 27 pertaining to Ivan, it appears DSS included the same factual allegations in all three petitions.

Mrs. B. "is a first-descendent of the Eastern Band of Cherokee Indians" but "not an enrolled member."

The "Review and Permanency Planning Review Order" includes a finding that Mrs. B. "is the paternal great-aunt of the minor child [Ivan]." As noted by respondent-father, the record indicates that Mrs. B. is a cousin of Ivan's father, not his aunt.

The GAL personally observed "competition between [Ivan] and [Elvin]" during a visit with Ivan's paternal grandmother on 27 July 2015.

Interstate Compact on the Placement of Children.

N.C. Sess. Law 2013-129, §§ 25, 41 (June 19, 2013). Current N.C. Gen. Stat. § 7B-906.1(i) (2015) contains substantially similar language to that found in former N.C. Gen. Stat. 7B-907(c).