IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-690

Filed: 16 June 2020

Wilkes County, No. 17 JA 70

IN THE MATTER OF: A.N.T.

Appeal by respondent from order entered 17 April 2019 by Judge Jeanie R. Houston in Wilkes County District Court. Heard in the Court of Appeals 26 May 2020.

*Erika Leigh Hamby for petitioner-appellee Wilkes County Department of Social Services.*

*Parker Poe Adams & Bernstein LLP, by Tiffany M. Burba and Catherine G. Clodfelter, for guardian ad litem.*

*Forrest Firm, P.A., by Patrick S. Lineberry for respondent-appellant.*

TYSON, Judge.

Respondent appeals from the trial court's order placing his daughter into a guardianship with a nonrelative. We vacate the order for nonrelative guardianship and remand.

## I. Factual and Procedural Background

Respondent is a federal inmate currently serving a sentence for manufacturing methamphetamine. Respondent has been incarcerated since 2010. His wife was released from federal prison in late 2016 after serving her sentence for manufacturing

methamphetamine. Their daughter, A.N.T. ("Alexis") was born in 2009 and has not lived with either parent since birth. *See* N.C. R. App. P. 42(b) (pseudonyms are used to protect the identity of the juveniles). Alexis was placed to live with her maternal grandparents.

DSS had previously been involved with these grandparents after receiving reports that drugs were being sold out of their home, and that Alexis' uncle was a pedophile and living in the home. On 8 June 2016, Wilkes County Department of Social Services ("DSS") filed a petition alleging abuse and neglect of Alexis by her maternal grandparents. By the time of the filing of the petition, Alexis had been moved into another family placement with her maternal great-grandparents.

On 26 July 2016, Alexis was adjudicated as neglected and dependent as defined in N.C. Gen. Stat. § 7B-101 (2019). Alexis remained in the care of her maternal great-grandparents. Overnight and weekend visits were allowed with her paternal aunt, Respondent's sister.

Alexis' mother entered into a case plan with DSS in November 2016 upon her release from prison. The mother visited with Alexis under supervision. The permanent plan for the child was reunification with her mother. On 8 May 2017, the court held a permanency planning hearing. By this date, Alexis' mother had become sporadic in her drug screens, and in maintaining housing and employment. The trial

court ordered a primary permanent plan of reunification and a concurrent plan of custody with an approved caregiver.

Additional review hearings were held in August and October 2017. Reunification of Alexis with her mother remained the primary plan, with custody with an approved caregiver as the concurrent plan. At the 30 October 2017 hearing, the trial court specifically allowed Alexis to receive letters from Respondent through DSS.

DSS received reports of physical and sexual abuse and illegal drug use by another relative living in the maternal great-grandparents' home. The great-grandparents were not transporting Alexis to medical or therapy appointments. DSS concluded Alexis' maternal great-grandparents were no longer able to adequately care for her. In February 2018, Alexis was moved to a nonrelative placement with her second-grade teacher and her teacher's husband ("Mr. and Mrs. L."). Alexis' mother consented to this placement.

After a permanency planning hearing held 19 March 2018, the district court relieved DSS of further reunification efforts with Respondent, who remained incarcerated in a federal prison, and continued the primary permanent plan of reunification with the mother. Two relatives were identified as potential placements for Alexis: a second cousin and a paternal aunt.

Alexis indicated she did not wish to live with her paternal aunt. Concerns had arisen earlier that the paternal aunt's children had engaged in sexual conduct with Alexis. Alexis' mother was re-incarcerated and subsequently released in August 2018.

Respondent's mother ("Mrs. T.") was recognized as a potential placement for Alexis for the first time at the 29 October 2018 permanency planning hearing. An adult son with a criminal record was reported to be living in the paternal grandparent's home. The court heard testimony from a DSS social worker and from Respondent's mother.

The trial court found Alexis was happy in Mr. and Mrs. L.'s home, she wanted to stay with them, and Mr. and Mrs. L. were agreeable to facilitating and maintaining a relationship with Alexis and her family. The court found Alexis had stated she wanted to stay with Mr. and Mrs. L., and did not want to be placed back into her maternal grandmother's home.

The court also found Respondent's release date from custody was June 2020. Alexis had refused a letter from her father and stated she did not know him. As noted, the trial court had specifically allowed Alexis to receive letters from Respondent through DSS at the 30 October 2017 hearing. Respondent had offered to "sign [his] rights over" to his daughter for her placement with his sister in June 2016.

The court found Respondent's mother was interested in opening her home for Alexis to live with her and her husband. The court's order includes a conclusion that DSS shall "explore the homes of the child's paternal grandmother's and her current foster home as a permanent placement." The record does not contain any home study for Respondent's mother.

Alexis' primary permanent plan was modified to custody with an approved caregiver and the secondary plan to be guardianship. Respondent failed to appeal from this order.

At the permanency planning hearing on 18 February 2019, the court heard testimony from Mrs. T. about the condition of her home, her desire to have Alexis placed in her care, and that Respondent had indicated it was his desire as well. Mrs. T. testified and the district court noted that her other adult son was no longer living in her home. Following this hearing, the court entered a permanency planning order on 17 April 2019 granting guardianship of Alexis to Mr. and Mrs. L. Respondent timely appealed.

## II. Jurisdiction

This Court possesses jurisdiction over Respondent's appeal from an order changing legal custody of a juvenile pursuant to N.C. Gen. Stat. § 7B-1001(a)(4) (2019).

## III. Issues

Respondent argues the trial court erred in granting guardianship to nonrelatives and in forbidding him to have visitation with Alexis while he was incarcerated.

## IV. Standard of Review

This Court's "review of a permanency planning order entered pursuant to N.C. Gen. Stat. § 7B-906.1 is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law." *In re D.S.*, 260 N.C. App. 194, 196, 817 S.E.2d 901, 904 (2018) (internal quotation marks and citation omitted). "The trial court's conclusions of law are reviewable *de novo* on appeal." *In re J.S.L.,* 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006) (internal quotation marks and citation omitted).

## V. Analysis

### A. Guardianship

Respondent challenges the trial court's grant of guardianship of Alexis to nonrelatives. Respondent asserts the statutes and precedents require the trial court to make specific findings of placement with his mother, Alexis' grandmother, before it could consider nonrelatives, Mr. and Mrs. L. We agree.

The district court "*shall first consider* whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home," in determining "out-of-home" care for a juvenile. N.C. Gen. Stat. § 7B-903(a1) (2019)

(emphasis supplied). The statute further directs that "[i]f the court finds that the relative is willing and able to provide proper care and supervision in a safe home, then *the court shall order* placement of the juvenile with the relative *unless* the court finds that the placement is contrary to the best interests of the juvenile." *Id.* (emphasis supplied).

N.C. Gen. Stat. § 7B-906.1(j) requires the court to "verify that the person receiving custody or being appointed as guardian of the juvenile understands the legal significance of the placement or appointment and will have adequate resources to care appropriately for the juvenile." N.C. Gen. Stat. § 7B-906.1(j) (2019). Consistent with N.C. Gen. Stat. § 7B-903, the court may consider the guardian to have "adequate resources" when the guardian has "provided a stable placement for the juvenile for at least six consecutive months." *Id.*

The guardian *ad litem* asserts N.C. Gen. Stat. § 7B-903 provides options and guidance to a court when a child must be removed from the home. *See* N.C. Gen. Stat. § 7B-903(a1). The guardian *ad litem* notes Alexis had been living outside of her parents' home since birth, was placed in two maternal relatives' homes, and was moved from both.

### 1. *In re D.S.*

"This Court has held that before placing a juvenile in an out-of-home placement at a permanency planning hearing, the trial court was required to first consider

placing [the juvenile] with [her relatives] unless it found that such a placement was not in [the juvenile's] best interests." *In re D.S.*, 260 N.C. App. at 197, 817 S.E.2d at 904 (internal quotation marks and citation omitted). We have further held "[f]ailure to make specific findings of fact explaining the placement with the relative is not in the juvenile's best interest will result in remand." *In re A.S.*, 203 N.C. App. 140, 141-42, 693 S.E.2d 659, 660 (2010) (citation omitted).

In the case of *In re D.S.,* the trial court had made no findings indicating it had considered placement of the child with her paternal grandmother, but concluded placement with her was not in the child's best interest. *In re D.S.*, 260 N.C. App. at 200, 817 S.E.2d at 906. In that case, the trial court made none of the "findings of fact or conclusions of law resolving this issue, which it [was] statutorily required to do." *Id.*

In that case, the district court specifically found that both parents opposed appointment of a nonrelative guardian and had expressed preference for the child to be placed with the maternal grandmother. The court made no finding indicating the grandmother's home had been investigated, considered, or rejected as a placement option for D.S. *Id.*

Here, the trial court was aware of the application and desire of Respondent's mother as a relative placement for Alexis. The record and the court's order show it heard testimony from Mrs. T. and viewed photos of her home at the October 2018 and

the 19 February 2019 hearings. She testified Respondent desired for Alexis to be placed into her care. At the October 2018 hearing, the trial court had ordered DSS to "explore the home[] of the child's paternal grandmother." No DSS home study appears in the record.

In support of its decision to award guardianship to Mr. and Mrs. L, the court made the following findings of fact.

> 14. It is not possible for the child to be returned to a parent immediately or within the next six (6) months.
>
> 15. There are relatives of the child who are willing and able to provide proper care and supervision in a safe home. [Alexis] was residing in the home of her maternal great grandparents, [Mr. and Mrs. C.,] but she was moved due to [Alexis'] uncle [M.C.'s] drug use and he was living with [Mr. and Mrs. C.]. [M.C.] has not been approved by Wilkes DSS to live in the home with [Alexis]. The child's paternal grandmother . . . is interested in becoming a placement for [Alexis].
>
> 16. The child's paternal grandmother, [Mrs. T.], lives on Yellow Banks Road in North Wilkesboro, N.C. in a 3-bedroom home. She and her husband are disabled and they draw $1,200.00 per month. [Mrs. T.] has not seen [Alexis] in approximately 2 years. [Mrs. T.] has a son [B.T.], who lived in her home and he works seasonally doing roofing, but he has a criminal record. [Mrs. T.] stated that [B.T.] no longer lives in her home. [Mrs. T.] has presented photos in the past of her home to the court as Father's Exhibit 1 and these were at that time admitted into evidence and incorporated herein as Findings of Fact.
>
> 17. There are non-relative kin who are willing and able to provide proper care and supervision for the child in a safe home, namely the child's current placement.

. . .

21. [Mr. and Mrs. L.] were present at the hearing. Pursuant to N.C.G.S. § 7B-600(b), the Court questioned [Mr. and Mrs. L.], and [Mr. and Mrs. L.] understand the legal significance of being appointed the minor child's guardian, and they have adequate resources to care appropriately for the minor child, and are able and willing to provide proper care and supervision of the minor child in a safe home.

22. The minor child has been placed with [Mr. and Mrs. L.] since February 2, 2018, and it is in the minor child's best [interest] that she be placed in guardianship with [Mr. and Mrs. L.]. [Mr. and Mrs. L.] are committed to caring for the minor child and providing guardianship, and it is unlikely that the respondent parents will be able to care for the minor child within the next six months. The minor child has been doing well in this placement and this placement is in her best interests.

Based upon these findings of fact, the trial court concluded:

1. That, pursuant to N.C.G.S. § 7B-600(b), the Court questioned [Mr. and Mrs. L.], and Mr. and Mrs. L[] understand the legal significance of being appointed the minor child's guardian, and they have adequate resources to care appropriately for the minor child, and are able and willing to provide proper care and supervision of the minor child in a safe home.

2. That the minor child has been placed with [Mr. and Mrs. L.] since February 2, 2018, and it is in the minor child's best [interest] that she be placed in guardianship with [Mr. and Mrs. L.]. Mr. and Mrs. L[]. are committed to caring for the minor child and providing guardianship, and it is unlikely that the respondent parents will be able to care for the minor child within the next six months. The minor child has been doing well in this placement and this placement is in her best interests.

The trial court's order memorializing the 18 February 2018 hearing is silent regarding whether the court had considered and rejected Mrs. T. as a willing and able relative placement for Alexis. No testimony or records produced at this hearing show the results of any DSS home study of Alexis' paternal grandmother's home.

The trial court made no finding that Respondent had expressed his desire for his daughter to be placed to live with his mother, or that it was not in Alexis' best interests to be in the care and custody of her paternal grandmother. As in the case of *D.S.*, the court "never made any findings of fact or conclusions of law resolving this issue, which it is statutorily required to do before placing [Alexis] with a non-relative." *Id*.

## 2. *In re E.R.*

Respondent also cites the case of *In re E.R.*, 248 N.C. App. 345, 795 S.E.2d 103 (2016). In that case the children, E.R. and E.R., were placed in a nonrelative guardianship. *Id.* at 347, 795 S.E.2d at 104. The district court determined it was in the best interests of E.R. and E.R. to be placed with a nonrelative guardian without making any reference to its consideration of placement with the maternal grandmother. *Id.* at 351, 795 S.E.2d at 106. The court's only mention of both children's grandmother was that she "may continue to be used as a resource for childcare of [the] minor children." *Id.*

In the case at bar, Respondent's expressed desire as a parent was for his daughter to live with his mother. Mrs. T. testified she was willing and able to care for Alexis and offered her home. The trial court referenced Respondent's mother's desire to be a placement for Alexis and the court listed the number of bedrooms in her home and the disability benefits she and her husband draw each month. Mrs. T. also testified her other son no longer lives in their home. This testimony is evidence to consider Mrs. T.'s ability to care for and provide a safe environment for eleven-year-old Alexis.

### 3. *In re L.L.*

This Court, in the case of *In re L.L.*, incorporated the requirement set forth in N.C. Gen. Stat. § 7B-903, that a trial court "shall" first give consideration to placement of a juvenile with relatives, before it may order the juvenile into placement with a nonrelative by a permanency planning order entered pursuant to N.C. Gen. Stat. § 7B-906. *In re L.L.*, 172 N.C. App. 689, 616 S.E.2d 392 (2005), *abrogated on other grounds by In re T.H.T.*, 362 N.C. 446, 665 S.E.2d 54 (2008). Section 7B-906 was repealed and replaced by N.C. Gen. Stat. § 7B-906.1. *See* 2013 N.C. Sess. Laws 129, §§ 25-26. Subsection 7B-906(d), addressed by this Court in *In re L.L.*, contained the mandatory language authorizing dispositions under N.C. Gen. Stat. § 7B-903. *In re L.L.*, 172 N.C. App. at 701, 616 S.E.2d at 399.

Current section 7B-906.1(i) contains the same reference to the same mandatory language of N.C. Gen. Stat. § 7B-903. *Id.* This Court's holding in *In re L.L.* remains controlling on this issue. *Compare* N.C. Gen. Stat. § 7B-906(d) (2003) *with* N.C. Gen Stat. § 7B-906.1(i) (2019). "Failure to make specific findings of fact explaining the placement with the relative is not in the juvenile's best interest will result in remand." *In re A.S.*, 203 N.C. App. at 141-42, 693 S.E.2d at 660 (citation omitted).

Our statutes and precedents mandate "a preference, where appropriate, to relative placements over non-relative, out-of-home placements." *In re T.H.*, 232 N.C. App. 16, 29, 753 S.E.2d 207, 216 (2014); *see also In re A.S.*, 203 N.C. App. at 141, 693 S.E.2d at 660 (recognizing our statutes "direct a juvenile court to consider placement with a relative as a first priority").

As in the cases of *In re D.S.*, *In re E.R.*, and *In re L.L.*, the trial court made no finding rejecting Mrs. T. as both willing and able to provide proper care and supervision in a safe home for her granddaughter. *See In re D.S.*, 260 N.C. App. at 197, 817 S.E.2d at 904; *In re E.R.*, 248 N.C. App at 351, 795 S.E.2d at 106; *In re L.L.*, 172 N.C. App. at 703, 616 S.E.2d at 400.

The order appealed from is inconsistent with the statutes and numerous precedents mandating placement of a juvenile with a suitable relative prior to considering a nonrelative. The court's order ignored the statutory requirements that

it "shall order placement" with Mrs. T. over Mr. and Mrs. L. *See* N.C. Gen. Stat. § 7B-903(a1) ("If the court finds that the relative is willing and able to provide proper care and supervision in a safe home, then *the court shall order* placement of the juvenile with the relative *unless* the court finds that the placement is contrary to the best interests of the juvenile" (emphasis supplied)).

The court's order placing Alexis in the legal guardianship of Mr. and Mrs. L. is vacated and this matter is remanded for a new permanency planning hearing where the trial court is to follow the statutes and precedents to make the required statutory findings of fact and conclusions of law. *See id.*

### B. Visitation

Respondent asserts the trial court's prohibition of visitation with Alexis while he is incarcerated was improper. He argues the trial court did not make a determination whether visitation would be in Alexis' best interest.

During the pendency of this case, N.C. Gen. Stat. § 7B-905.1(a) provided "[a]n order that removes custody of a juvenile from a parent, guardian, or custodian or that continues the juvenile's placement outside the home *shall provide for appropriate visitation* as may be in the best interests of the juvenile consistent with the juvenile's health and safety. The court may specify in the order conditions under which visitation may be suspended." N.C. Gen. Stat. § 7B-905.1(a) (2017) (emphasis supplied).

At the hearing from which the April 2019 order was appealed, Respondent did not seek a modification of the prohibition of prison visitation. Respondent's counsel attended every hearing in this matter. The guardian *ad litem* and DSS assert Respondent has waived his right to argue the trial court erred by forbidding him visitation while he was incarcerated because he had multiple opportunities to object or seek modification and failed to do so.

It is unnecessary to determine whether Respondent has waived this argument. Respondent is scheduled for release from incarceration in June 2020. The trial court's order provides for Respondent's visitation with his daughter upon release from prison. Subject to the constitutional protection to "the interest of parents in the care, custody, and control of their children," disposition and visitation orders are always subject to review and revision. *See Troxel v. Granville*, 530 U.S. 57, 65, 147 L. Ed. 2d 49, 56 (2000) ("The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court."); N.C. Gen. Stat. § 7B-905.1(d) (2019) ("If the court retains jurisdiction, all parties shall be informed of the right to file a motion for review of any visitation plan entered pursuant to this section. Upon motion of any party and after proper notice and a hearing, the court may establish, modify, or enforce a visitation plan that is in the juvenile's best interest."); N.C. Gen. Stat. § 7B-1000(a)-(b) (2019) ("Upon motion in the cause or petition, and after notice, the court

may conduct a review hearing to determine whether the order of the court is in the best interests of the juvenile, and the court may modify or vacate the order in light of changes in circumstances or the needs of the juvenile [and] the jurisdiction of the court to modify any order or disposition made in the case shall continue during the minority of the juvenile, until terminated by order of the court, or until the juvenile is otherwise emancipated.").

Since we are vacating the trial court's permanency planning order entered 17 April 2019 and remanding for a new permanency planning hearing, it is unnecessary to reach the merits of Respondent's argument. We dismiss without prejudice to Respondent to raise the visitation issue after release from incarceration.

## VI. Conclusion

Our statutes and precedents clearly mandate relative placements of a juvenile to maintain familial bonds. The statutes and precedents require and presume the juvenile's best interest is served when placed with a family member.

The district court is statutorily required to consider and place Alexis with a family member, who is willing and able to provide a safe home for her, before consideration of a juvenile's placement with a nonrelative. *See* N.C. Gen. Stat. § 7B-903(a1). The court erred when it disregarded Alexis' grandmother's and Respondent's wishes and proceeded to order guardianship with a nonrelative.

The trial court's award of guardianship of Alexis to Mr. and Mrs. L. is vacated and the case is remanded for a new permanency planning hearing consistent with the statutes, precedents, and changed conditions. *It is so ordered.*

VACATED AND REMANDED.

Judges BRYANT and YOUNG concur.